******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CAROLYNE Y. HYNES *v.* SHARON M. JONES
(AC 38630)

Sheldon, Beach and Flynn, Js.*

*Syllabus*

The plaintiff, the administratrix of her decedent husband's estate, appealed
to this court from the judgment of the Superior Court after it dismissed
her appeal from the decree of the Norwalk-Wilton Probate Court entered
in connection with a payment made to her for the benefit of the dece-
dent's and the plaintiff's minor child through a federally sponsored victim
compensation fund. The decedent had died intestate in the September 11,
2001 terrorist attack in New York. At the time of the decedent's death,
he and the plaintiff resided in Norwalk. After the plaintiff received
payments from the fund for herself and for the child, she and the child
relocated to a town in a different probate district but did not seek to
transfer the probate proceedings there from the Norwalk-Wilton Probate
Court. The Probate Court thereafter appointed the plaintiff as the guard-
ian of the child's estate but did not allow her to use any of the child's
award from the compensation fund for the child's support. The plaintiff
did not appeal from that ruling but subsequently moved to dismiss the
guardianship proceedings on the ground that the court lacked subject
matter jurisdiction pursuant to statute (§ 45a-629 [a]) because the child
no longer resided in that probate district when the proceedings began
and because the child's award was paid to the plaintiff in the plaintiff's
capacity as a representative payee. The Probate Court denied the plain-
tiff's motion to dismiss, concluding that it had subject matter jurisdiction
over the guardianship proceedings and because the award from the
compensation fund was intended to be part of the decedent's estate.
The court further concluded that it had jurisdiction over the decedent's
estate because the decedent was domiciled in Norwalk at the time of
his death and the child's share of the award was part of that estate.
In dismissing the plaintiff's appeal to the Superior Court, that court
determined that, under § 45a-629 (a), the Norwalk-Wilton Probate Court
had jurisdiction to appoint the plaintiff as the guardian of the child's
estate because the child was a resident of Norwalk when she first
became entitled to the award. The court further determined that the
child's relocation to another probate district did not deprive the Norwalk-
Wilton Probate Court of continuing jurisdiction over the child's estate
because the plaintiff could have sought to transfer the proceedings but
did not do so. The court also concluded that payment of the award to
the plaintiff in her capacity as a representative payee did not exempt
the award from the statutory protection afforded to the property of
minors. On appeal to this court, the plaintiff claimed, inter alia, that
the Superior Court incorrectly concluded that the Probate Court had
jurisdiction under § 45a-629 (a) to appoint a guardian of the child's
estate. *Held*:

1. The Superior Court correctly concluded that the Probate Court had juris-
diction to appoint a guardian of the child's estate pursuant to § 45a-629
(a) as part of its jurisdiction over the administration of the decedent's
intestate estate; the statutes (§§ 45a-303 [a] [1], 45a-98 [a] [1] and [3], and
45a-132 [a] [1]) governing Probate Court jurisdiction and the authority of
the Probate Court to determine property rights and to appoint guardians
for minors who may have an interest in the probate proceedings provided
the Probate Court with jurisdiction to appoint a guardian to protect the
child's interests, the distribution of money from the compensation fund
to the child, who was a beneficiary thereunder, justified the Probate
Court's decision to appoint a guardian of the child's estate, and, because
the decedent's estate was in the Norwalk-Wilton probate district, it had
jurisdiction over that estate and an obligation to see that what was
awarded to the child as the beneficiary was rightfully distributed to her
under the laws of intestacy.

2. The plaintiff could not prevail on her claim that, because only a probate
court in the district in which the minor resides has jurisdiction to appoint
a guardian for that minor's estate, and because the child did not reside in

the Norwalk-Wilton probate district, the Norwalk-Wilton Probate Court lacked jurisdiction to appoint a guardian under § 45a-629: the award from the compensation fund for the benefit of the child was a form of property to which the child was entitled, the child was a resident of the Norwalk-Wilton probate district when her entitlement to that award occurred, the plaintiff's duty to apply for a guardianship became mandatory at the time of that occurrence, and the Probate Court in which the guardian was originally appointed retains jurisdiction to protect a minor child's interests unless and until the guardian files a motion to transfer the proceedings to another district and the transferring court finds that it is in the best interest of the child and orders the transfer; moreover, the award from the compensation fund to the plaintiff in her capacity as a representative payee did not permit her to bypass the statutory protections afforded to the child's property, and there was no indication that those protections were preempted by federal law.

Argued March 6—officially released July 25, 2017

*Procedural History*

Appeal from the order of the Probate Court for the district of Norwalk-Wilton denying the plaintiff's motion to dismiss the application to appoint a guardian for the estate of her minor child, brought to the Superior Court in the judicial district of Stamford-Norwalk and tried to the court, *Hon. David R. Tobin*, judge trial referee; judgment dismissing the appeal, from which the plaintiff appealed to this court. *Affirmed.*

*Michael P. Kaelin*, with whom, on the brief, was *William N. Wright*, for the appellant (plaintiff).

*Opinion*

FLYNN, J. Following the two devastating terrorist attacks on Washington and New York and a third thwarted by air passengers who died over Pennsylvania on September 11, 2001, Congress enacted the September 11th Victim Compensation Fund of 2001 (fund) as part of the Air Transportation Safety and System Stabilization Act[1] to indemnify the surviving families of those who died or were injured in the air and on the ground that day. The appeal before us from a judgment of the Superior Court dismissing the appeal of the plaintiff, Carolyne Y. Hynes, from a decree of the Norwalk Probate Court,[2] arises out of a separate payment of $1,271,940.12 made from the fund to the plaintiff as "representative payee" for the benefit of her daughter, Olivia T. Hynes. Olivia is a minor child, who was born after her father, Thomas Hynes, a business executive, was killed in the attack on the World Trade Center in New York. At issue is whether the Probate Court for the district of Norwalk had jurisdiction to appoint the plaintiff as guardian of Olivia's estate and to appoint the defendant, Sharon M. Jones, as Olivia's successor guardian ad litem under the authority granted to the Probate Court under the General Statutes, despite the fact that Olivia ceased to reside in the District of Norwalk at the time of the appointment. A second issue is whether the Probate Court lacked jurisdiction to institute the guardianship proceedings because the $1,271,940.12 was later paid directly to Olivia's mother from the fund as "representative payee." We first conclude that because Thomas Hynes was domiciled in Norwalk at the time he died intestate, our General Statutes gave the Norwalk Probate Court authority to supervise the settlement of his estate, determine its distribution, and protect the interests of his minor heir. Pursuant to General Statutes §§ 45a-303 (a),[3] 45a-98,[4] and 45a-438,[5] there were grounds to justify the Probate Court's exercise of jurisdiction as part of its supervision of the administration and distribution of Thomas Hynes' estate, and the Probate Court's and Superior Court's denials of the plaintiff's motion to dismiss. We further conclude that General Statutes §§ 45a-629 (a),[6] 45a-437,[7] and 45a-631[8] authorized appointment of a guardian because Olivia was entitled to share one half of any award of damages resulting from her father's death, and Olivia was domiciled in Norwalk at the time she became entitled to an award under the fund. Finally, we conclude that the plaintiff's later decision to receive Olivia's award in 2004 as a representative payee did not serve to exempt the $1,271,940.12 that the fund paid on behalf of Olivia from Connecticut's statutory protections for minors' property. We therefore conclude that the Norwalk Probate Court had such jurisdiction and affirm the judgment of the Superior Court acting as the Probate Court on appeal from probate.

The following procedural history, factual findings from the Norwalk Probate Court proceeding, findings made by the Superior Court, and undisputed facts inform our review. The plaintiff's husband, Thomas Hynes, was killed in the September 11, 2001 terrorist attacks on the World Trade Center in New York. At the time of Thomas' death, he and the plaintiff resided together in Norwalk, a city located in the probate district of Norwalk. Their daughter, Olivia, was born a few months later on March 28, 2002. Thomas died intestate. On April 24, 2003, the plaintiff filed an application with the Probate Court for the District of Norwalk to be appointed administrator of Thomas' estate. Obtaining appointment of an administrator of Thomas' estate was a prerequisite to filing a claim with the fund. See 49 U.S.C. § 405 (c) (2) (C). The Probate Court granted the plaintiff's application, and appointed Attorney Brock T. Dubin as guardian ad litem for Olivia, who served without fee until he resigned in September, 2008. After the plaintiff was appointed administrator of Thomas' estate, she filed a claim for compensation with the fund. By letter dated June 3, 2004, Special Master Kenneth R. Feinberg[9] stated that the plaintiff's claim had been approved for a total award of $2,425,321.70, with the plaintiff as the "beneficiary" of $1,153,381.58, and Olivia as the "beneficiary" of the remaining $1,271,940.12. Feinberg's letter stated that Olivia's share of the award would be paid to the plaintiff as Olivia's "representative payee," and indicated to the plaintiff that, as representative payee, "you are obliged—like a trustee—to ensure that funds are used in the minor['s] best interest. You assume full responsibility for ensuring that the award[s] paid to you as representative payee are used for the minor['s] current needs or, if not currently needed, are saved for his or her future needs. This includes a duty to prudently invest funds, maintain separate accounts for [Olivia], and maintain complete records. In addition, upon reaching [eighteen] years of age . . . [Olivia is] entitled to receive the award paid to you as representative payee. Thus, at such time, you must distribute the award to [Olivia] unless [she] otherwise willingly consent[s]." Olivia's funds were wired to the plaintiff's personal bank account.

In April, 2005, the plaintiff and Olivia relocated to Weston, a town within the probate district of Westport. The plaintiff did not seek to transfer the probate proceedings from the Norwalk Probate Court. In its decree denying the plaintiff's motion to dismiss the guardianship proceedings, the Probate Court found that, in late 2006, the plaintiff filed a final accounting with the Norwalk Probate Court showing the fund award, but that when it came to distributing to Olivia her share of the proceeds, the plaintiff "balked at the statutory requirement of the guardian of the estate of a minor or the suggestion that the fund proceeds go into a trust for the benefit of the minor." The Probate Court further

found that the plaintiff "remain[ed] steadfast in her contention that the money awarded to [Olivia] was to be used at the [plaintiff's] discretion, contending that it was given to her individually and/or as representative payee for [Olivia], but in either event, subject neither to the jurisdiction of this court nor the statutes of this state." The Probate Court further found that, "[a]cting in accordance with [this] belief, [the plaintiff] placed all of the proceeds from the fund in one account, in direct violation of the federal mandate, which calls for representative payees to 'prudently invest funds, maintain separate accounts, and maintain complete records.' " The Probate Court further found that "[f]rom this co-mingled account, the [plaintiff] withdrew money to purchase a home for approximately $884,000 and spent an additional $150,000 in renovations."

On July 31, 2008, the Norwalk Probate Court appointed the defendant as Olivia's successor guardian ad litem in the estate administration proceedings. The Probate Court found that, in 2009, "at the court's insistence, the [plaintiff] placed the funds intended for [Olivia] in a separate account, after which the court was able to observe that approximately $385,000 of [Olivia's] funds had been expended in her first seven years. Prudently, the court ordered the [plaintiff] to account." While the Probate Court was able to make certain findings as to where some of the monies went, it went on to find that "[a] more detailed analysis of how this $385,000 was spent remains doubtful, as the [plaintiff] refused, neglected or otherwise failed to keep or produce any accounting records. Nevertheless, the sums before us establish that not only had the money been co-mingled, but that it was being spent at an alarming rate and for purposes most of which are the [plaintiff's] obligations. Further aggravating the issue were the thousands of dollars apparently being lost on exorbitant management fees and market losses. These factors require the court to act before the remaining principal quickly disappears."

On June 9, 2010, the plaintiff filed an application to be appointed guardian of the estate for Olivia, which the Norwalk Probate Court granted. After granting the application, however, the Probate Court refused to allow the plaintiff to utilize Olivia's funds to pay for certain expenses. The Probate Court reasoned that, while the expenses benefited Olivia, her assets should not be used for her support because the plaintiff was already legally obligated to support her. The plaintiff took issue with the Probate Court's reasoning that none of Olivia's award from the fund could be used for her support, but did not appeal from that decree.

Although General Statutes § 45a-186 (a) permits appeal to Superior Court from any "order, denial or decree" of a court of probate, the plaintiff took no appeal from that ruling of the Probate Court, which

might have resolved the issue of whether the fund award to Olivia could have properly been used for the child's support. However, even if it were determined that it could be so utilized, on appeal it might not have resolved the issue of whether the Probate Court had jurisdiction to monitor these expenditures to ensure that the child's award was not used for expenditures that misused or misspent the funds. The plaintiff's position was that Olivia's award from the fund specifically provided that the award could be used for the child's current needs and that she did not need to deplete her personal funds to satisfy the current needs of her child, and that the Probate Court had no continuing jurisdiction to require her to account for how the funds were expended.

Instead, on August 21, 2013, the plaintiff moved to dismiss the guardianship proceedings, asserting that the Norwalk Probate Court lacked subject matter jurisdiction over the guardianship proceedings under § 45a-629 (a) because Olivia no longer resided in that district when the proceedings began. Alternatively, the plaintiff argued that no Connecticut Probate Court had jurisdiction to institute guardianship proceedings because Olivia's share of the fund award was paid to the plaintiff as Olivia's "representative payee," placing the funds "beyond our state's control or supervision." It is clear from the record provided to us that the plaintiff moved to dismiss her own appointment as guardian of Olivia's estate. However, if some of the plaintiff's contentions were accepted, it is also clear that the Norwalk Probate Court also would lack authority to appoint a guardian ad litem.

The Probate Court found the issues at hand to be whether (1) the court "lacks subject matter jurisdiction over the guardianship proceeding under . . . General Statutes § 45a-629 because [Olivia] no longer resides in the district," and (2) whether "a guardianship is not appropriate in any Connecticut Probate Court because the payment from the fund was to the [plaintiff] as the [Olivia's] 'representative payee,' placing it beyond our state's control or supervision."

In the Probate Court proceeding, the defendant objected to the motion to dismiss, argued that the court has jurisdiction, and that Connecticut statutes such as § 45a-629 are directed to venue rather than jurisdiction. She further argued that nothing in the federal statute creating the fund was intended to preempt state law.

The Norwalk Probate Court denied the plaintiff's motion to dismiss in a decree dated June 3, 2014. Rather than addressing the plaintiff's statutory argument regarding § 45a-629 (a), the Norwalk Probate Court determined that it had subject matter jurisdiction over the guardianship proceedings because an award by the fund was intended to be a substitute for a wrongful death claim and was therefore part of Thomas' estate. The Norwalk Probate Court reasoned that it had juris-

diction over Thomas' estate because Thomas was domiciled in Norwalk at the time of his death on September 11, 2001, and Olivia's share in the award was part of that estate. Therefore, noting that General Statutes § 45a-631 provides that minors who receive property in excess of $10,000 "must have a guardian of the estate appointed," the Norwalk Probate Court concluded that it had jurisdiction over the guardianship proceedings.

The plaintiff then took an appeal to the Superior Court. Because no transcription record was made in the Probate Court proceedings, the matter was heard de novo by the court, *Hon. David R. Tobin*, judge trial referee, on September 24, 2015, pursuant to § 45a-186 (a). Although the defendant guardian ad litem personally appeared in the Superior Court proceeding, her counsel did not, and the plaintiff's counsel represented to the court that neither the defendant nor her counsel now objected to dismissal for lack of jurisdiction because of what the plaintiff's counsel termed a "private agreement" made to set up a trust for Olivia and pay the guardian's and her counsel's fees.

The Superior Court dismissed the appeal in a memorandum of decision filed November 6, 2015, albeit on different grounds from that of the Norwalk Probate Court. Construing the plain text of § 45a-629 (a), along with other relevant statutes, the court determined that jurisdiction to appoint a guardian of the estate of a minor is conferred upon the Probate Court for the district in which the minor resides at the time the minor first becomes entitled to property, rather than at the time the application for guardianship is filed. Thus, the Superior Court concluded that the Norwalk Probate Court had jurisdiction because Olivia was a resident of Norwalk when she first became entitled to the award in June, 2004. Additionally, the Superior Court held that Olivia's subsequent move to Weston did not deprive the Norwalk Probate Court of continuing jurisdiction over her estate because the plaintiff could have moved to transfer the proceedings to the Westport Probate District pursuant to General Statutes § 45a-599, but declined to do so. Finally, the court ruled that the plaintiff's election to have Special Master Feinberg make payment to the plaintiff directly as representative payee did not serve to exempt the award from the statutory protection afforded to the property of minors. This appeal followed.

On appeal, the plaintiff claims that the Superior Court's conclusion that the Norwalk Probate Court had jurisdiction to appoint a guardian of the estate for Olivia was based upon an improper construction of § 45a-629 (a). Specifically, the plaintiff argues that, under the plain text of § 45a-629 (a), jurisdiction is conferred upon the Probate Court for the district in which the minor resides at the time the application for guardianship is filed, not at the time the minor becomes entitled to property.

Alternatively, the plaintiff argues that Olivia was not "entitled" to the funds when she resided in Norwalk because she could not access the funds until she reached eighteen years of age. The plaintiff's brief does not address the reasoning underlying the Probate Court's decision.

The defendant filed no brief in this court and did not appear, either by herself or through counsel, for oral argument. On March 8, 2017, this court issued the following order: "The plaintiff's appeal to the Appellate Court was heard on March 6, 2017. The defendant Sharon Jones and her counsel Attorney Grant P. Haskell have appeared in this appeal pursuant to Practice Book § 62-8. The defendant did not file a brief or participate in oral argument. The defendant is hereby ordered, sua sponte, to file in writing with the clerk of the Appellate Court, a concise statement of her position regarding the pending appeal by no later than March 23, 2017. The statement should indicate whether she opposes the plaintiff's position, concurs with it, or takes no position on behalf of her ward and herself." On March 26, 2017, the defendant's counsel filed the following response with the clerk of the Appellate Court: "In response to the order of the [c]ourt of March 8, 2017, in the above-referenced appeal, I write as counsel to defendant Jones to inform the [c]ourt that defendant and her ward take no position in this appeal."

At the outset, we note that this appeal raises two claims of error. The first challenges the jurisdiction of the Norwalk Probate Court and the Superior Court hearing the case de novo. The second challenges the court's award of the defendant guardian ad litem's fees and the fees she incurred for legal counsel. The plaintiff's brief does not address its appeal of the fees awarded and we therefore deem that challenge to the fees awarded abandoned. See *Lareau* v. *Burrows*, 90 Conn. App. 779, 780, 881 A.2d 411 (2005).

As explained subsequently in this opinion, we disagree that the Norwalk Probate Court lacked subject matter jurisdiction to appoint a guardian of Olivia's estate to protect her interests. First, we agree with the Norwalk Probate Court that an award under the fund is a substitute for a wrongful death claim and, thus, was part of Thomas' estate. Because Thomas died while domiciled in Norwalk, the Norwalk Probate Court had jurisdiction to appoint a guardian ad litem to protect Olivia's interests in Thomas' estate, including the award from the fund. Moreover, we agree with the Superior Court and reject the statutory argument advanced by the plaintiff. We conclude that § 45a-629 (a) conferred jurisdiction on the Norwalk Probate Court because Olivia became entitled to property while she was domiciled in that district.

I

We begin by addressing the Probate Court's reasoning that because Thomas died while domiciled in Norwalk, the Norwalk Probate Court had jurisdiction to appoint a guardian of Olivia's estate as part of its jurisdiction over the administration of Thomas' intestate estate.

We first set forth our standard of review. "An appeal from a Probate Court to the Superior Court is not an ordinary civil action. . . . When entertaining an appeal from an order or decree of a Probate Court, the Superior Court takes the place of and sits as the court of probate. . . . In ruling on a probate appeal, the Superior Court exercises the powers, not of a constitutional court of general or common law jurisdiction, but of a Probate Court." (Internal quotation marks omitted.) *Silverstein* v. *Laschever*, 113 Conn. App. 404, 409, 970 A.2d 123 (2009). Where, as in the present case, no record was made of the probate proceedings, the Superior Court was required to undertake a de novo review of the Probate Court's decision. See *Andrews* v. *Gorby*, 237 Conn. 12, 15–16, 675 A.2d 449 (1996); General Statutes § 45a-186 (a).

Although our case law is replete with citations as to the review standard of the Superior Court sitting de novo on an appeal from probate, we find no exposition of the standard to be employed by the appellate tribunal hearing an appeal from probate as opposed to any other case decided by the Superior Court. Accordingly we treat our scope of review as we would with any other Superior Court proceeding. Where the court has made factual findings, we defer to it unless those findings are clearly erroneous. However, in matters of law such as the jurisdictional challenge made here, our review is plenary. See *In re Michaela Lee R.*, 253 Conn. 570, 583, 756 A.2d 214 (2000).

Because our review is plenary, we look to whether the General Assembly conferred authority on the Probate Court to appoint the plaintiff as guardian of the estate of Olivia and to appoint the defendant as guardian ad litem. Although the plaintiff has not briefed the question of the court's authority arising out of its clear statutory charge to preside over Thomas Hynes' estate settlement and duty to protect minor children entitled under the laws of intestacy to share in the proceeds of his estate, these statutes underpinned the Norwalk Probate Court's denial of the plaintiff's motion to dismiss. They are independent grounds supporting the Superior Court's conclusion that jurisdiction did exist.

We first observe that probate courts "are strictly statutory tribunals. . . . As such, they have only such powers as are either expressly or impliedly conferred upon them by statute. . . . Ordinarily, therefore, whether a Probate Court has jurisdiction to enter a given order depends upon the interpretation of a statute." (Citations omitted.) *Potter* v. *Alcorn*, 140 Conn. 96, 100, 99 A.2d

97 (1953).

Probate courts in this state are provided with broad authority over the administration of intestate estates, including the authority to appoint guardians of the estate to protect minors' interests. Section 45a-303 (a) (1) provides that "[w]hen any person domiciled in this state dies intestate, the court of probate in the district in which the deceased was domiciled at his death shall have jurisdiction to grant letters of administration." Section 45a-98 sets forth the general jurisdictional powers of the Probate Court. Section 45a-98 (a) (1) gives the court jurisdictional power to grant administration of intestate estates of those who die domiciled in their districts. Section 45a-98 (a) (3) gives the Probate Court power to "determine title or rights of possession and use in and to any real or tangible, or intangible property that constitutes, or may constitute, all or part of . . . any decedent's estate, or any estate under control of a guardian or conservator, which . . . estate is otherwise subject to the jurisdiction of the Probate Court, including the rights and obligations of any beneficiary of the . . . estate . . . ." General Statutes § 45a-132 (a) (1) provides that, subject to exceptions that are not relevant here, "in any proceeding before a court of probate . . . the judge . . . may appoint a guardian ad litem for any minor . . . if it appears to the judge . . . that one or more persons . . . have or may have an interest in the proceedings, and that one or more of them are minors . . . at the time of the proceeding."

These statutes provided the Norwalk Probate Court with jurisdiction to appoint a guardian of the estate to protect Olivia's interests. Under the laws of intestacy where there is both a surviving spouse and a surviving child of that marriage, § 45a-437 (3) provides that the surviving spouse shall take the first $100,000 plus one half of the intestate estate absolutely. Section 45a-438 (a) provides that, in that same intestate situation, after distribution to the surviving spouse, the residue of the real and personal estate shall be distributed equally among the children of the deceased. Olivia was Thomas' only child. Section 45a-631 (a) provides in relevant part that "[a] parent of a minor, guardian of the person of a minor . . . shall not receive or use any property belonging to the minor in an amount exceeding ten thousand dollars in value unless appointed guardian of the estate of a minor . . . ." The distribution of $1,271,940.12 from the fund to Olivia, whom Special Master Feinberg termed a "beneficiary" in his letter of distribution, justified the Probate Court's decision to appoint a guardian of the estate for Olivia. The Probate Court found that when the plaintiff filed her first accounting, on September 14, 2006, she sought to distribute the entire award, plus other sums, "exclusively to herself alone, with nothing to be distributed to the minor," although $1,271,940.12 of that sum was separately awarded to her daughter as "beneficiary" under

the fund. The Probate Court found that that distribution scheme would result in a distribution "contrary to law" that the court could not allow. That accounting was not approved, was withdrawn, and resulted in an amended inventory and accounting indicating that the minor was awarded $1,271,940.12 from the fund, which was approved. We agree with the conclusion of the Probate Court that Thomas' estate was in the Norwalk probate district and that the Norwalk Probate Court had jurisdiction over that estate and an obligation to see that what was awarded to Olivia as beneficiary, a minor child who was a statutorily protected person, was rightfully distributed to her as beneficiary under the laws of intestacy. Accordingly, the Norwalk Probate Court had subject matter jurisdiction over the guardianship proceedings.

## II

Although our analysis in part I of this opinion resolves the issue of whether the Norwalk Probate Court had jurisdiction, we next address the plaintiff's claim that, under § 45a-629, only the Probate Court for the district in which the minor resides may appoint a guardian of the minor's estate. The plaintiff contends that Olivia did not reside within the Norwalk probate district at the time the guardianship was created by the Norwalk Probate Court but instead resided in Weston in the Westport probate district. She further contends that because probate courts are courts of limited jurisdiction rather than general jurisdiction, a Probate Court has no authority under § 45a-629 to appoint a guardian for a minor who does not reside in that district. Section 45a-629 (a) provides in relevant part: "When a minor is entitled to property, the court of probate for the district in which the minor resides may assign a time and place for a hearing on the appointment of a guardian of the estate of the minor . . . ."

In its memorandum of decision, the Superior Court held that "[w]hen Olivia became entitled to her award from the [fund], she resided in Norwalk, and the court accordingly finds that the Probate Court in Norwalk had jurisdiction over [the plaintiff's] application to be appointed Olivia's guardian, and in the absence of an application to transfer the guardianship to the probate district in which Olivia now resides, retains jurisdiction over the guardianship." Our assessment of the propriety of this ruling implicates a question of statutory construction over which our review is plenary. See *In re Bachand*, 306 Conn. 37, 41–42, 49 A.3d 166 (2012).

The question hinges in part on whether the award to Olivia constituted property and if so, when Olivia became "entitled to property." Section 45a-629 (a) provides in relevant part: "When a minor is entitled to property, the court of probate for the district in which the minor resides may assign a time and place for a hearing on the appointment of a guardian of the estate

of the minor . . . ." As a child of Thomas Hynes, who died intestate, Olivia was an heir at law of Thomas.

The court decided that the award to Olivia is property. Citing *Lopiano* v. *Lopiano*, 247 Conn. 356, 364–65, 752 A.2d 1000 (1998), the Superior Court adopted the broad definition of property found in Black's Law Dictionary (6th Ed. 1990). In *Lopiano*, our Supreme Court held that a personal injury award in favor of one spouse was "property" subject to equitable distribution in a divorce case pursuant to General Statutes § 46b-81. Id., 362, 371. Because neither § 46b-81 nor any other closely related statute defines property or identifies the types of property subject to equitable distribution, the court looked to the "common understanding expressed in the law and in dictionaries." Id., 364. The *Lopiano* court then noted that Black's Law Dictionary defines property as the term "commonly used to denote everything which is the subject of ownership, corporeal or incorporeal, tangible or intangible, visible or invisible, real or personal; everything that has an exchangeable value or which goes to make up wealth or estate." (Internal quotation marks omitted.) Id., 365. The *Lopiano* court then noted that General Statutes § 52-278a (e), the attachment statute, defines property to mean "any present or future interest in real or personal property . . . ." (Internal quotation marks omitted.) Id. Both §§ 45a-629 (a) and 45a-631 are at issue here. The first requires appointment of a guardian of the estate of a minor "when a minor is entitled to property." The second provides that a parent of a minor "shall not receive or use any property belonging to the minor in an amount exceeding ten thousand dollars in value unless appointed guardian of the estate of the minor . . . ." As in *Lopiano*, neither of these two statutes defines property, and therefore use of the broad dictionary definition is appropriate here. Under that broad definition, the Superior Court properly determined that the $1,271,940.12 payment made from the fund for the benefit of Olivia was property.

We next analyze whether the award for Olivia's loss was a form of property to which she was "entitled," thereby requiring appointment of a guardian of her estate pursuant to § 45a-629. We conclude, as did the court, that it was property to which she was entitled.

When Thomas Hynes died intestate as a result of airliners being crashed into the twin towers of the World Trade Center, he possessed[10] a right to bring a wrongful death action against the airlines operating those airplanes, which could be commenced by his administrator, as he died without a will. Under § 45a-437, which governs intestacy, since Thomas left the plaintiff as surviving spouse and Olivia, who was the child of Thomas and the plaintiff, born after his untimely death, Olivia was entitled to one half of the intestate estate after the first $100,000 was distributed to her mother,

the plaintiff, Thomas' surviving spouse. Olivia's entitlement to that portion vested at the time of her birth. The Superior Court found that, at the time of that entitlement, she resided in Norwalk. That entitlement included her right to share proceeds of any wrongful death action against an airline or that right's statutory alternative, namely, the federally sponsored victim compensation fund. The statutory right of action under General Statutes § 52-555 for wrongful death belongs, in effect, to the decedent, and damages are recoverable for the death as one of the consequences of the wrong inflicted on the decedent. The cause of action is a continuance of a right of action that the decedent could have asserted if he had lived and to which the death may be added as an element of damages. *Foran* v. *Carangelo*, 153 Conn. 356, 360, 216 A.2d 638 (1966). The right of action comes to a personal representative by survival. *Floyd* v. *Fruit Industries, Inc.*, 144 Conn. 659, 668, 136 A.2d 918 (1957). The creation of a special victim's fund by the United States government, funded by taxpayers, provides an alternative to bringing such a wrongful death action.[11] In the case of an individual killed in the attacks, the fund permits only their personal representative to file a claim on his behalf. 49 U.S.C. § 405 (c) (2) (C). In Connecticut, that personal representative is an executor or administrator of the estate of the decedent. The plaintiff applied to the fund after being duly appointed as administrator of her late husband's estate on her application to the Norwalk Probate Court. That the entitlement had not ripened into a fixed amount at the time of Olivia's entitlement did not diminish her right. As our Supreme Court noted in *Lopiano*, in viewing how other statutes governing distinct procedures defined property, the attachment statute, § 52-278a (e), defines property to mean "any present or future interest in . . . personal property . . . ." (Internal quotation marks omitted.) *Lopiano* v. *Lopiano*, supra, 247 Conn. 365. Olivia was entitled to share in the proceeds of any wrongful death action arising out of her father's death, and her right could be asserted on her behalf when she was born, whether that right was a wrongful death action or a claim made to the fund provided by Congress.

We therefore reject the plaintiff's contention that the requirement of § 45a-629 (a) that residence within the probate district was a precondition to appointment of a guardian did not relate to her entitlement to her property right in the proceeds of a wrongful death action or its alternative, an application to the fund, and conclude that the Superior Court properly determined that she was a resident of Norwalk when that entitlement to property occurred.

The Superior Court properly determined that the plaintiff's duty to apply for a guardianship became mandatory "when . . . the minor child first becomes [en]titled to property." (Internal quotation marks omitted.)

The court held that the plaintiff's "obligation to make application to the Probate Court began when Olivia became entitled to her award in June, 2004, while still residing in Norwalk, and continued until she filed her application on June 9, 2010, six years later."

The only purpose for the appointment of a guardian pursuant to § 45a-629 (a) is for protection of the property interests of a minor. That duty is triggered at the point when a minor acquires a property right to be protected. As an heir at law, the ward in this case acquired the right to bring a wrongful death action as soon as she was born after her father's death. She became entitled under the laws of intestacy, more particularly, to share in one half of the proceeds of any such wrongful death action brought against the airlines. That legal standing was also a necessary precondition to filing a claim with the victim compensation fund. The statutory purpose of the fund is "to provide full compensation to any individual (or relatives of a deceased individual) who was physically injured or killed as a result of the terrorist-related aircraft crashes of September 11, 2001, or the rescue and recovery efforts during the immediate aftermath of such crashes." 49 U.S.C. § 40101.

The plaintiff further argues that, even if the Norwalk Probate Court originally had jurisdiction, it could be divested of that jurisdiction once Olivia moved into a town located in the probate district of Westport. We are not persuaded. The plaintiff cites no authority for that proposition. To the contrary, § 45a-599 provides in relevant part: "When any minor for whom a guardian has been appointed becomes a resident of any town in the state in a probate district other than the one in which a guardian was appointed, such court in that district may, upon motion of any person deemed by the court to have sufficient interest in the welfare of the respondent . . . transfer the file to the probate district in which the minor under guardianship resides at the time of the application, provided the transfer is in the best interest of the minor. . . . When the transfer is made, the court of probate in which the minor under guardianship resides at the time of transfer shall thereupon assume jurisdiction over the guardianship and all further accounts shall be filed with such court." That section leads us to conclude that our statutory scheme is not one in which a vacuum is created every time a minor child subject to a guardianship of her estate moves to a new district. Rather, § 45a-599 recognizes that, unless and until the guardian, or other person the court deems to have a sufficient interest in the welfare of the child, files a motion to transfer the proceedings to another district, and the transferring Probate Court finds that it is in the best interest of the minor and orders the transfer, the probate district in which the guardianship was originally appointed retains jurisdiction to protect that child's interests. The plaintiff never

moved to transfer the guardianship proceedings. As the Superior Court found, it was up to the plaintiff to move to change the venue to Westport for future proceedings if she believed that was appropriate. The court would then decide if the venue change was in the minor's best interest. The plaintiff was in the best position to know when Olivia changed her residence from Norwalk.

In interpreting statutes, we presume that the legislature did not intend an absurd result. See *In re Bachand*, supra, 306 Conn. 42. The obvious purpose of the enactment of § 45a-629 is to give minor children protections in their property during their period of minority. Changes of address that have the consequence of moving from one probate district to another should not elutriate those protections by suspension of any Probate Court supervision after the move when no motion has been made and granted to change the venue to a court district serving the new address. The plaintiff argues that the court should in effect put a gloss on the statute to require that the residency in the district exist at the time of making the appointment, as is expressly required by General Statutes § 45a-648 (a),[12] regulating the appointment of involuntary representatives. However, as the Superior Court pointed out, § 45a-629 (a) contains no similar restriction tying the residency required to the date of application for the guardianship. The involuntary representation enabling statute has as its purpose the protection of the interests of persons who have reached their majority but are no longer competent to handle their own affairs. The legislature has enacted a specific requirement that the application for involuntary representation, for someone no longer capable, be made in the probate district in which he or she resides at the time of application. Section 45a-629 (a) concerns minors who are, in the eyes of the law, infants and lack legal status to conduct their own affairs at any time from birth through their entire period of minority, but have entitlement to an interest in property and whose entitlement triggers the need for protection of their property entitlement. Each statute is consistent in its rationale, and each statute requires that the operative petition concerning a ward be made in the district in which he or she resides when the ward's rights first require the ward's protection. In the case of a person deemed incapable and needing the law's protection, § 45a-648 (a) requires that the petition be filed in the probate district in which he or she resides at the time he or she is no longer capable of handling his or her affairs. In a case of the minor who lacks legal status to handle his or her own affairs, and needs the law's protection of his or her property, the law requires that a petition for guardianship be filed in the district in which the child lives at the time he or she becomes entitled to property.

We next address the plaintiff's second contention that, because Special Master Feinberg paid the

$1,271,940.12 allocable to Olivia's claim to her as representative payee, no guardianship or Probate Court supervision of the minor's estate was necessary. We reject the plaintiff's contention that she could somehow bypass the statutory protections afforded to a minor's property in the state of Connecticut by electing to recover payment of Olivia's award as a representative payee. As the court stated in its memorandum of decision, there is no indication that federal law in any way preempted Connecticut laws for the protection of minors.

Olivia was no less entitled to funds paid for her benefit simply because her mother elected to have them paid to her as representative payee. We reject the plaintiff's contention that payment of Olivia's award to the plaintiff as representative payee avoided creation of any entitlement or property interest in Olivia. The $1,271,940.12 paid to the plaintiff as a representative payee for Olivia was related to Olivia's loss of her father and the damages that she as his child suffered. This award was in lieu of pursuit of a wrongful death action in which the child under the laws of intestacy would have received one half of any resulting damages. To conclude that the child has no property interest or entitlement in and to this award, which merits statutory protection for minors, is without any authority under our law. This argument would, if accepted, defeat the whole purpose for our statutory protections of minors' property. That statutory purpose is to discourage misuse or misappropriation of such assets of minors, and to protect such assets so that they are safeguarded for that day when a minor child reaches her majority and is then entitled at age eighteen to use and direct expenditure and investment of such assets herself.[13] The plaintiff points to no provision of federal law or regulation that would preempt Connecticut's laws for the protection of minors. Special Master Feinberg's precatory language indicating the adoption of this representative payee language, designed to mollify those who wished an alternative to avoid supervision of New York's surrogate's courts, not tied to federal statute or regulations officially adopted under its authority, cannot abrogate Connecticut law.[14]

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] See 49 U.S.C. § 40101.

[2] The Norwalk Probate Court has long served the towns of Norwalk and Wilton. In 2011, the name of that court was changed to the Norwalk-Wilton Probate Court. For purposes of clarity, we refer to that court as the Norwalk Probate Court throughout this opinion.

[3] General Statutes § 45a-303 (a) (1) provides: "When any person domiciled in this state dies intestate, the court of probate in the district in which the deceased was domiciled at his death shall have jurisdiction to grant letters of administration."

[4] General Statutes § 45a-98 (a) provides in relevant part: "Probate Courts in their respective districts shall have the power to (1) grant administration

of intestate estates of persons who have died domiciled in their districts . . . (3) except as provided in section 45a-98a or as limited by an applicable statute of limitations, determine title or rights of possession and use in and to any real, tangible or intangible property that constitutes, or may constitute, all or part of . . . any decedent's estate, or any estate under control of a guardian or conservator, which . . . estate is otherwise subject to the jurisdiction of the Probate Court, including the rights and obligations of any beneficiary of the . . . estate . . . ."

[5] General Statutes § 45a-438 (a) provides in relevant part: "After distribution has been made of the intestate estate to the surviving spouse . . . the residue of the real and personal estate shall be distributed equally, according to its value at the time of distribution, among the children, including children born after the death of the decedent . . . ."

[6] General Statutes § 45a-629 (a) provides in relevant part: "When a minor is entitled to property, the court of probate for the district in which the minor resides may assign a time and place for a hearing on the appointment of a guardian of the estate of the minor. . . ."

[7] General Statutes § 45a-437 (a) provides in relevant part: "If there is no will . . . the portion of the intestate estate of the decedent . . . which the surviving spouse shall take is . . . (3) If there are surviving issue of the decedent all of whom are also issue of the surviving spouse, the first one hundred thousand dollars plus one-half of the balance of the intestate estate absolutely . . . ."

[8] General Statutes § 45a-631 provides in relevant part: "(a) A parent of a minor, guardian of the person of a minor or spouse of a minor shall not receive or use any property belonging to the minor in an amount exceeding ten thousand dollars in value unless appointed guardian of the estate of the minor . . . ."

[9] The fund required the United States attorney general to appoint a special master to promulgate regulations to implement the provisions of the fund; see 49 U.S.C. § 404; and to determine claimants' eligibility for compensation under the fund. See 49 U.S.C. § 405. Kenneth Feinberg was appointed the special master.

[10] "[T]he statutory right of action [for wrongful death] belongs, in effect, to the decedent, and to the decedent alone, and damages are recoverable for the death . . . as for one of the consequences of the wrong inflicted upon the decedent." (Internal quotation marks omitted.) *Foran* v. *Carangelo*, 153 Conn. 356, 360, 216 A.2d 638 (1966).

[11] Individuals eligible for compensation under the fund are entitled to an award only if they waive their right to file a civil action against the airlines or other defendants. 49 U.S.C. § 405 (c) (3) (B).

[12] General Statutes § 45a-648 (a) provides: "An application for involuntary representation may be filed by any person alleging that a respondent is incapable of managing his or her affairs or incapable of caring for himself or herself and stating the reasons for the alleged incapability. The application shall be filed in the Probate Court in the district in which the respondent resides, is domiciled or is located *at the time of the filing of the application*." (Emphasis added.)

[13] We do not decide the substantial issue of whether the traditional Connecticut common-law rule that a parent must first use his or her own resources for the support of a child must bow to the purpose of the Victim Compensation Fund to provide full compensation for relatives of the deceased and Special Master Feinberg's letter to the plaintiff enclosing the award indicating intent to provide monies for the support of the minor and that monies not needed for that purpose were to be saved. These issues are not before the court in this appeal.

[14] See Final Report of the Special Master for the September 11th Victim Compensation Fund of 2001, p. 60.