OLGA J. B. STEINMANN *vs.* PAUL STEINMANN.

Maltbie, C. J., Hinman, Banks, Brown and John Rufus Booth, Js.

Argued May 13th—decided July 10th, 1936.

*Albert W. Hummel,* for the appellant (defendant).

*William W. Gager,* for the appellee (plaintiff).

Banks, J.   The defendant appeals from the judgment of the court awarding the plantiff a divorce upon the ground of intolerable cruelty, $7500 alimony, and an allowance of $3000 for the support of their minor child; also from an order of the court granting the plaintiff an allowance of $150 to defend the appeal proceedings.   The defendant seeks a number of corrections in the finding.   The evidence does not justify the making of any material changes therein which would affect the result.

Plaintiff and defendant were married in 1902 and have six children, all of whom are of age except a daughter of sixteen.   In 1923 plaintiff was on the verge of a nervous breakdown as a result of the defendant's ill treatment which consisted of "hectoring and nagging her," abusing her with vile, obscene and profane language and calling her indecent names, particularly when intoxicated, threatening her with physical violence and striking her upon at least one occasion. Because of such ill treatment the plaintiff went to California in October, 1923, returning in March, 1924. As a result of the defendant's ill treatment the plaintiff from 1925 to 1931 was under the care of a doctor, who was of the opinion that continuation of her marital

relationship would be dangerous to her health. In 1931 she was at a health farm for five months. In February, 1932, she left the defendant and went to live with a nurse and later with her oldest daughter until March, 1933, when she returned to the defendant upon his request and promise that he would not again mistreat her. In spite of his promise defendant's behavior became worse, he came home intoxicated, called the plaintiff vile names and charged her with misconduct in the presence of the children and in general subjected her to the most abusive treatment. From 1933 on, plaintiff and defendant occupied separate rooms, though, as a result of his insistent demands, plaintiff did at times prior to May 1st, 1935, accord defendant his marital privileges. They continued to live in the same house until September, 1935, when the plaintiff required defendant to leave. Since he left, her health has improved and she has gained some fifteen pounds in weight.

Upon these subordinate facts the court reached the conclusion that the defendant was guilty of intolerable cruelty toward the plaintiff justifying the granting of a divorce upon that ground. This is conclusive unless it appears that it was illegally or illogically drawn from the subordinate facts. Though cruel acts may not be individually intolerable, yet if they are manifestations of a persistent and consistent cruel conduct, they may in their cumulative effect become unbearable and intolerable and justify the termination of the marriage relation. *Swist* v. *Swist,* 107 Conn. 484, 490, 140 Atl. 820. The persistently cruel conduct of the defendant which the court has found justifies its conclusion that it created a situation that had become unbearable by the plaintiff. The defendant contends that the conclusion of the court that his conduct was intolerable is illogical and illegal, since by returning to live with

him in 1933 she showed that she was both able and willing to tolerate it and condoned any acts of cruelty prior to that time. Be that as it may, the finding is that after her return in 1933 the behavior of the defendant was worse than before. Notwithstanding this the plaintiff did continue to live in the same house with him until after the divorce action was instituted, though occupying separate rooms. From this the court might have drawn an inference that defendant's conduct was not such as to render the continuance of the marital relation unbearable by the plaintiff, but from all the subordinate facts in the case it concluded to the contrary. The determination whether there is a cause for divorce is to be made as of the time of the trial, *Allen* v. *Allen,* 73 Conn. 54, 46 Atl. 242, and we cannot say that it could not logically and legally so conclude.

In the early years of their married life plaintiff and defendant were engaged in farming and later converted their farm property into a real-estate development. Before she went to California in 1923 plaintiff conveyed to the defendant a one-half interest in the property which they jointly owned for the purpose of facilitating his dealing in the property during her absence, and upon his promise to reconvey it to her upon her return. After her return defendant refused to reconvey, but after an action was brought by the plaintiff a compromise was effected by which the defendant agreed to assign to the plaintiff one-half of the mortgages held by him and a one-half interest in all the real estate owned by him. As the result of a later settlement of their property interests, the plaintiff became the outright owner of property of the value of $21,097.75, and the defendant the outright owner of property of the value of $28,512. The defendant claimed that the conveyances of the mortgages and the

real estate by him to the plaintiff were made in pursuance of an agreement that in consideration of such conveyances the plaintiff would make no further claim against him for any portion of his estate, and no claim for support or for the support of their minor daughter, and that such agreement would prevent a judgment in this action awarding the plaintiff alimony and an allowance for the support of the child. The trial court found that no such agreement was made by the defendant. There was a conflict in the evidence as to the existence of such an agreement, and the finding must stand. The court found that $7500 was a reasonable sum to allow the plaintiff as alimony and $3000 for the support of their minor child and that such allowance should be made in a lump sum since the defendant might depart the jurisdiction and render an order for periodic payment unenforceable.

In determining the portion of the defendant's estate which shall be awarded to the plaintiff as alimony there is no inflexible standard. The amount to be awarded rests within the sound discretion of the trial court which will not be disturbed unless it clearly appears that it has been abused. *Olmstead* v. *Olmstead,* 85 Conn. 478, 83 Atl. 628; *Hegel* v. *Hegel,* 99 Conn. 18, 120 Atl. 722; *Heard* v. *Heard,* 116 Conn. 632, 166 Atl. 67. It does not appear that the trial court failed to take into consideration any of the circumstances, in so far as they were before it, which we said in *Olmstead* v. *Olmstead,* supra, the court was bound to consider in making the award. We cannot say that the award of $7500, which is slightly more than one-fourth of the defendant's estate, is so excessive as to be an invalid exercise of the discretion of the court.

The same is true as to the award of $3000 for the support of the minor child to cover her needs for the period of five years until she becomes of age. The

provision of § 4799 of the General Statutes, that the parent of a minor child shall not receive or use any property belonging to such child to an amount exceeding $100 unless appointed guardian of the estate of such minor does not invalidate this award. The amount of the award is not the property of the minor child within the meaning of this statute. The award is to the mother of a sum to be used by her for the support of the child. Where such an award is made there is, to be sure, a possibility that the mother may not use the money for the purpose for which it is allowed, or that the child may die or for other reasons no longer be dependent upon the mother for her support. It was within the power of the trial court to condition such an allowance upon the giving by the mother of security for the proper use of the money and the return to the defendant of any amount not expended for the support of the child when she becomes twenty-one, or in the event that support by the mother becomes unnecessary; and in default of such security, the court might order that the money be placed in trust upon like conditions. *Earle* v. *Earle,* 143 N. Y. Sup. 841, 843. The defendant did not, however, ask that either of these courses be taken. In view of the trial court's finding that the defendant had threatened to leave the country, which would make it difficult or impossible to enforce a decree for periodic payments, it was well within its discretion to award a lump sum.

The defendant appeals from the order of the court granting the plaintiff an allowance of $150 to defend the appeal proceedings. An allowance to a wife for expenses of litigation in a divorce action had its origin in the complete control which until recent times the husband had over all property, not only that which was his own but also that which his wife had at the

time of the marriage or which she might acquire during coverture. While the changes in the rights of married women now permit them to own property in their own right and largely dispose of it as they will, it still remains true that usually the control of the property to which the wife looks for support rests with the husband. The basis of the allowance is that she should not be deprived of her rights because she lacks funds which may be supplied from property in which as a wife she has a real interest but which is usually within the control of the husband. If, however, she possesses property of her own sufficient to pay the expenses of the suit and available for that use, she is not ordinarily entitled to an allowance. *Westerfield* v. *Westerfield,* 36 N. J. Eq. 195; *Lake* v. *Lake,* 194 N. Y. 179, 183, 87 N. E. 87; Keezer, Marriage & Divorce (2d Ed.) § 714. In this case, however, the trial court in its memorandum of decision upon the motion for the allowance made a part of the finding states that while the plaintiff had a substantial amount of property, it was not in liquid form, that she had only sufficient ready money barely to support herself during the pendency of the appeal, and that she was making no claim for ailmony pendente lite. Under these circumstances we cannot say that the trial court erred in making the allowance.

There is no error.

In this opinion the other judges concurred.