******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

CAROLYNE Y. HYNES *v.* SHARON M. JONES
(SC 20009)

Robinson, C. J., and Palmer, McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.

*Syllabus*

The plaintiff, who had received an award from the September 11th Victim
Compensation Fund following the death of her husband during the
September 11, 2001 terrorist attacks, appealed to the trial court from
the Probate Court's denial of her motion to dismiss guardianship pro-
ceedings relating to their minor child. The letter from the compensation
fund's special master authorizing that award indicated that the plaintiff
had elected to receive certain money on behalf of the minor child as a
representative payee. The letter further elaborated that, in that capacity,
the plaintiff had an obligation to use the money in the minor child's
best interest, to invest it prudently, and to distribute it to the minor
child once she reached the age of majority. Following receipt of the
award, the Probate Court directed the plaintiff to place the money into
a guardianship account. The plaintiff complied and subsequently filed
an application to be appointed guardian of the minor child's estate. The
Probate Court granted that application but, thereafter, declined to allow
the plaintiff to use the funds in the account to pay for certain of the
minor child's expenses, concluding that that the plaintiff had a common-
law duty to use her own resources for the minor child's support. The
plaintiff then filed a motion to dismiss the guardianship proceedings,
claiming a lack of jurisdiction, which the Probate Court denied. The
plaintiff appealed from that decision to the trial court, which concluded
that the Probate Court had jurisdiction to appoint a guardian because
the plaintiff's election to receive compensation fund money directly as
a representative payee did not exempt that money from the statutory
protections afforded to the property of minors. The trial court rendered
judgment dismissing the plaintiff's probate appeal, from which the plain-
tiff appealed to the Appellate Court. That court concluded that the award
was a substitute for a wrongful death claim and, therefore, constituted
part of the husband's estate. The Appellate Court reasoned that, because
the husband died intestate while he was domiciled in Norwalk, the court
of probate in that district had jurisdiction to appoint a guardian ad litem
to protect the minor child's interests in the husband's estate. The court
further concluded that the Probate Court had jurisdiction pursuant to
the statute (§ 45a-629) governing the use of property to which a minor
child is entitled. Accordingly, the Appellate Court affirmed the trial
court's judgment, and the plaintiff, on the granting of certification,
appealed to this court. *Held* that the Appellate Court improperly upheld
the trial court's dismissal of the plaintiff's probate appeal, this court
having concluded that the Probate Court lacked subject matter jurisdic-
tion to appoint a guardian of the minor child's estate: an examination
of the compensation fund's history and purpose indicated that, to bal-
ance the need to provide flexibility to custodians and to preserve legal
protections for minors, the special master had permitted payments to
guardians, trustees, and representative payees, and that, although indi-
viduals electing to receive awards as representative payees were contrac-
tually obligated to follow the conditions imposed by the compensation
fund, such awards were paid in express contemplation of the absence
of state probate court supervision; moreover, because the compensation
fund award paid to the plaintiff was neither part of the husband's estate
nor the property of the minor child, the Probate Court lacked statutory
authority to exercise jurisdiction to monitor the plaintiff's use of that
award or to prohibit such use without the Probate Court's approval.

Argued September 17, 2018—officially released April 16, 2019

*Procedural History*

Appeal from the order of the Probate Court for the
district of Norwalk-Wilton denying the plaintiff's appli-

cation to dismiss guardianship proceedings with respect to her minor child, brought to the Superior Court in the judicial district of Stamford-Norwalk, and tried to the court, *Hon. David R. Tobin*, judge trial referee; judgment dismissing the appeal, from which the plaintiff appealed to the Appellate Court, *Sheldon, Beach* and *Flynn, Js.*, which affirmed the trial court's judgment, and the plaintiff, on the granting of certification, appealed to this court. *Reversed*; *judgment directed*.

*Michael P. Kaelin*, with whom, on the brief, was *William N. Wright*, for the appellant (plaintiff).

*Opinion*

ROBINSON, C. J. The dispositive issue in this certified appeal is whether the Probate Court has jurisdiction to approve or monitor use of a September 11th Victim Compensation Fund (fund) award that had been paid to a surviving spouse as a "representative payee" for the benefit of her minor child. The plaintiff, Carolyne Y. Hynes, appeals, upon our grant of her petition for certification,[1] from the judgment of the Appellate Court affirming the judgment of the trial court dismissing her appeal from the decree of the Probate Court. *Hynes* v. *Jones*, 175 Conn. App. 80, 82–85, 167 A.3d 375 (2017). On appeal, the plaintiff claims that the Probate Court lacks jurisdiction over a fund award paid to the plaintiff as a "representative payee" because that award is neither (1) the property of the estate of her late husband, the decedent Thomas Hynes, within the meaning of General Statutes § 45a-98 (a),[2] nor (2) the property of their daughter, Olivia T. Hynes, within the meaning of General Statutes § 45a-629 (a),[3] which governs property to which a minor child is "entitled," or General Statutes § 45a-631 (a),[4] which governs property "belonging to" a minor. We agree with the plaintiff and, accordingly, reverse the judgment of the Appellate Court.

The following factual and procedural history informs our review. The decedent was killed in the September 11, 2001 terrorist attack on the World Trade Center and died intestate. The plaintiff and the decedent resided in the city of Norwalk at the time of his death. On March 28, 2002, the plaintiff gave birth to their daughter, Olivia.[5] On April 24, 2003, the plaintiff filed an application with the Probate Court seeking appointment as the administrator of the decedent's estate. The Probate Court granted the application and appointed Attorney Brock T. Dubin as guardian ad litem for the minor child.

After her appointment as administrator of the decedent's estate, the plaintiff filed a claim for compensation from the fund. By letter to the plaintiff, dated June 3, 2004, the fund's special master, Kenneth R. Feinberg,[6] authorized a total award of $2,425,321.70. Specifically, the plaintiff was awarded $1,153,381.58 as a "[b]eneficiary," and the minor child was awarded $1,271,940.12 as a "[b]eneficiary." The award letter stated that the plaintiff had elected to receive benefits directly on behalf of the minor child as a " 'representative payee.' " The letter subsequently identified the plaintiff as the "payee" a second time, and stated that she was to be paid $1,271,940.12 "on behalf of" the minor child. The letter then elaborated on the representative payee's obligations as follows: "As you know, as a representative payee, you are obliged—like a trustee—to ensure that funds are used in the [minor's] best interest. You assume full responsibility for ensuring that the [award] paid to you as representative payee [is] used for the [minor's] current needs or, if not currently needed . . .

saved for his or her future needs. This includes a duty to prudently invest funds, maintain separate accounts for each minor, and maintain complete records. In addition, upon reaching [eighteen] years of age (or age of majority as recognized by state law), the [minor is] entitled to receive the award paid to you as representative payee. Thus, at such time, you must distribute the award to the [minor] unless the [minor] otherwise willingly [consents]."

On July 31, 2008, the Probate Court appointed the defendant, Sharon M. Jones, as successor guardian ad litem for the minor child in the estate administration proceedings. Thereafter, the Probate Court insisted that the minor child's share of the benefits from the fund be placed into a guardianship account. On June 9, 2010, in compliance with the Probate Court's wishes, the plaintiff filed an application to be appointed guardian of the minor child's estate. The Probate Court granted the application but thereafter refused to allow the plaintiff to utilize the funds held in the guardianship account to pay for certain expenses. The plaintiff argued that the expenses were principally for the benefit of the minor child, but the Probate Court, reasoning that the plaintiff had a common-law duty to support the minor child as long as she possessed the resources to do so, concluded that the minor child's assets should not be used for such expenses.

The plaintiff did not appeal from that decree of the Probate Court. Instead, on August 21, 2013, she moved to dismiss the guardianship proceedings, claiming a lack of jurisdiction. On June 3, 2014, the Probate Court denied the plaintiff's motion to dismiss. Specifically, the Probate Court determined that it had subject matter jurisdiction over the guardianship proceedings, reasoning that an award from the fund was a substitute for a wrongful death claim and was, therefore, part of the decedent's estate.[7]

The plaintiff then appealed from the Probate Court decree to the trial court. Pursuant to General Statutes § 45a-186 (a), the trial court heard the matter de novo because no recording had been made of the Probate Court proceedings. The trial court subsequently issued a memorandum of decision dismissing the probate appeal. In reaching this conclusion, the trial court construed the text of § 45a-629 (a), along with other relevant statutes, and determined, inter alia, that jurisdiction to appoint a guardian of the estate of a minor child is conferred upon the Probate Court for the district in which the minor resides at the time the minor first becomes entitled to property. The trial court concluded that the plaintiff's election to have the fund make payment to the plaintiff directly as representative payee did not exempt the award from the statutory protections afforded to the property of minors. Accordingly, the trial court rendered judgment dismissing the plain-

tiff's probate appeal.

The plaintiff appealed from the judgment of the trial court to the Appellate Court. The Appellate Court agreed with the Probate Court that an award from the fund was a substitute for a wrongful death claim and consequently was part of the decedent's estate. *Hynes* v. *Jones*, supra, 175 Conn. App. 92. The Appellate Court reasoned that, because the decedent died while domiciled in Norwalk, the court of probate in that district had jurisdiction to appoint a guardian ad litem to protect the minor child's interests in the decedent's estate. Id. The Appellate Court also concluded that the Probate Court had jurisdiction because the minor child became entitled to property within the meaning of § 45a-629 (a) while she was domiciled in that probate district. Id. Accordingly, the Appellate Court affirmed the judgment of the trial court. Id., 105. This certified appeal followed.[8] See footnote 1 of this opinion.

On appeal to this court, the plaintiff argues that an award from the fund, when paid directly to a surviving spouse as a "representative payee" in exchange for that spouse's agreement to use the award to pay for the child's current needs, is not subject to the jurisdiction of the Probate Court. The plaintiff claims that the fund award was paid to her as a representative payee for her minor child, not as a representative of her husband's estate, and that the fund never intended that awards paid to representative payees would be subject to the jurisdiction of the various states' probate courts. The plaintiff asserts that § 45a-629 (a) only authorizes the appointment of a guardian for a minor "when a minor is entitled to property," and that the minor child was not entitled to property because the fund award was paid directly to the plaintiff. The plaintiff argues that, under § 45a-98, the Probate Court's jurisdiction is limited to property that comprises, or may comprise, part of a decedent's estate, and that the fund award is not part of the decedent's estate. The plaintiff also claims that § 45a-631 (a), which requires that a parent not receive or use any property belonging to the minor child in an amount more than ten thousand dollars without first being appointed guardian of the minor's estate, is inapplicable given that the fund award did not constitute property belonging to the minor child.

We agree with the plaintiff that the Probate Court lacked subject matter jurisdiction to appoint a guardian of the minor child's estate. Specifically, we first conclude that a fund award paid to the plaintiff as a "representative payee" did not constitute a part of the decedent's estate. We further conclude that the award does not constitute property to which the minor child is "entitled" under § 45a-629 (a), and does not constitute property "belonging" to the minor child under § 45a-631 (a).

Courts of probate "are statutory tribunals that have

no common-law jurisdiction. . . . Accordingly, [these courts] can exercise only such powers as are conferred on them by statute. . . . They have jurisdiction only when the facts exist on which the legislature has conditioned the exercise of their power. . . . [A] court [that] exercises a limited and statutory jurisdiction is without jurisdiction to act unless it does so under the precise circumstances and in the manner particularly prescribed by the enabling legislation." (Internal quotation marks omitted.) *Connery* v. *Gieske*, 323 Conn. 377, 388, 147 A.3d 94 (2016). The question in this case is whether any existing statute grants the Probate Court authority to exercise jurisdiction over the fund award paid to the plaintiff in her capacity as representative payee for her minor child. Thus, whether the Probate Court has jurisdiction over the fund award presents a question of statutory interpretation, which is an issue of law over which our review is plenary. See, e.g., *In re Henrry P. B.-P.*, 327 Conn. 312, 324, 173 A.3d 928 (2017).

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) Id., 324–25.

In order for the Probate Court to exercise jurisdiction over a fund award, there must be a legislative grant of authority for such jurisdiction. There are a number of possible sources of jurisdiction that could apply in the present case, independently or in combination. When an individual dies intestate, General Statutes § 45a-303 (a) (1)[9] authorizes probate courts to grant letters of administration. Section 45a-98[10] authorizes probate courts to determine title or rights of possession and use for property that constitutes part of a decedent's estate. General Statutes § 45a-438 (a)[11] provides that, after distribution to the surviving spouse, the residue of the real and personal estate shall be distributed equally

among a decedent's children. Additionally, General Statutes § 45a-437 (a)[12] provides that a surviving spouse shall take the first $100,000 plus one half of an intestate estate. Therefore, if the fund award at issue in the present case is considered to be property of the decedent's estate, these statutes support the Probate Court's exercise of jurisdiction over the award as part of that court's supervision of the administration and distribution of the decedent's estate.

Alternatively, § 45a-629 (a) provides that when a minor is entitled to property, the probate court for the district in which the minor resides may assign a time and place for a hearing on the appointment of a guardian of the minor's estate. See footnote 3 of this opinion. Likewise, § 45a-631 (a) requires a parent to be appointed guardian over the estate of his or her child before receiving or using any property belonging to that minor in an amount exceeding $10,000. See footnote 4 of this opinion. Therefore, if the fund award is considered to be property to which the minor child was entitled, or property that belonged to her, a statute would support the Probate Court's appointment of a guardian for the minor child's estate and its exercise of jurisdiction over the award as property of the plaintiff's minor child.

Our analysis hinges on whether the fund award, paid to the plaintiff as a "representative payee" for the benefit of the minor child, was part of the decedent's estate, or property of the decedent or the minor child, within the meaning of these statutes. In order to make such a determination, we consider the purpose of the fund.

Following the terrorist attacks of September 11, 2001, Congress created the fund in connection with the Air Transportation Safety and System Stabilization Act (Stabilization Act), Pub. L. No. 107-42, 115 Stat. 230 (2001). The express purpose of the fund was "to provide compensation to any individual (or relatives of a deceased individual) who was physically injured or killed as a result of the terrorist-related aircraft crashes of September 11, 2001." Stabilization Act § 403, 115 Stat. 237. A special master was appointed by the United States Attorney General to administer the fund, promulgate "procedural and substantive rules," and determine eligibility for compensation from the fund. Stabilization Act §§ 404 (a), 405 (b) (1) (A), 115 Stat. 238. Congress specified that the following individuals were eligible for compensation from the fund: (1) those present at the World Trade Center, the Pentagon, or the site of the aircraft crash in Shanksville, Pennsylvania, at the time, or in the immediate aftermath, of the terrorist related aircraft crashes on September 11, 2001, who suffered physical harm or death as a result of those crashes; (2) passengers and crew members on the four aircraft involved; and (3) "in the case of a decedent who is an individual described in [one of the two preceding categories], the personal representative of the decedent

who files a claim on behalf of the decedent." Stabilization Act § 405 (c) (2), 115 Stat. 239. Congress further required that the United States Attorney General, in consultation with the special master, promulgate regulations concerning implementation of the fund within ninety days of enactment. Stabilization Act § 407, 115 Stat. 240. The United States Department of Justice and the special master solicited public comments and made efforts to garner the views of interested parties.[13] Interim final regulations providing information about the determination of losses under the Stabilization Act and the procedures for submitting claims were issued on December 21, 2001. Final regulations were issued on March 13, 2002, after the Department of Justice and special master had reviewed 2687 timely comments made by the public. See 28 C.F.R. § 104.1 et seq. (2002); 1 K. Feinberg et al., Final Report of the Special Master for the September 11th Victim Compensation Fund of 2001 (2004) p. 5 (final report).

These sources of federal law are unclear as to the legal nature of fund awards. The situation at issue in the present case is sui generis in our case law; a third party, here the United States government, has made an award directly to a parent as a representative payee for her minor child and imposed fiduciary obligations requiring the parent to use the award to provide for the child's current needs.[14] We must, therefore, examine more closely the manner in which the award was made in order to determine its proper treatment under Connecticut law.

It is clear from the special master's final report that the fund had two principal intentions when it developed a scheme for payment of awards to or on behalf of minors. The fund wanted to provide flexibility to custodians and protection to minors. 1 K. Feinberg et al., supra, p. 56. The fund contemplated a number of different options for payment, including guardianship, trusts, custodial accounts, representative payees, and periodic payments through structured settlements. Id., p. 60. As the special master explained, there were advantages and disadvantages with each approach. For example, in considering the guardianship approach, the special master observed that, although becoming a guardian is a relatively simple process in undisputed cases, "many states impose significant limitations on the ability of the guardian to access the minor's funds. The fundamental premise in these states is that it is the guardian's duty to protect the funds during the child's minority, and, therefore, the award is to be used only after a parent's obligation of support has been satisfied. In New York, for example, in order to utilize funds a parent must disclose his or her financial means and indicate why access to the funds is necessary. The court then decides whether to allow the expenditure." (Footnote omitted.) Id. The fund ultimately decided to allow guardianship as one option, among several others, noting that it was

the "most protective option," but declined to require guardianship in all cases, concluding that such a restriction would "not promote the [p]rogram's goal of providing funds to parents and custodians of minor children for purposes of the child's current as well as future needs." Id., 61. Thus, the fund made clear that it would not mandate the most protective option at the expense of flexibility in parents' and custodians' use of the funds to meet minor children's current needs. "Many parents of minor beneficiaries, particularly those residing in New York, argued that requiring a parent to be appointed guardian of the property would be cumbersome and unnecessarily restrictive. These parents complained that they would be unable to provide adequately for their children's needs if they were required to submit to the probate and surrogate's courts requirements in their jurisdiction. They asked the [f]und to provide an alternative mechanism for payment to minors that would be less onerous." Id., p. 60.

The fund provided such an alternative by allowing the option of appointing a parent as a representative payee. "Under this option, a parent would apply to the [f]und to serve as a representative payee. Upon appointment by the [f]und, the representative payee would hold the funds on behalf of the minor and would have the fiduciary responsibility to ensure that the award to the child was utilized for the child's current needs, and, if not currently needed, saved for the child's future needs." Id., p. 61. This approach was at the opposite end of the spectrum from a guardianship; whereas the guardianship approach was perhaps the most protective option, the representative payee approach was arguably the least protective option. "The advantage of this option was its flexibility and ease of administration. The disadvantage was the lack of oversight and supervision of the representative payee by a third party." Id.

After weighing the advantages and disadvantages of these approaches, and others, the fund ultimately chose to allow for payment (1) to parents and custodians who choose to become appointed guardians and receive awards in that capacity, (2) into a trust if the trust was approved for that purpose by a court of competent jurisdiction, and (3) to a custodial parent as a representative payee on behalf of a minor child if the parent applied with the fund for such status.[15] Id.

The plaintiff elected to be paid as a representative payee on behalf of the minor child. The fund allowed for this option, envisioning that the use of the award would not be subject to oversight by state probate courts. The imposition of fiduciary obligations on the representative payee is best seen as an effort by the fund (1) to ensure that a representative payee, *not* otherwise subject to court supervision, agreed to be bound to use the award in the manner expressly required by the award letter, and (2) to provide access to a remedy in

the event that the representative payee violated that agreement. The obligations imposed by the fund are not imposed by statute, but by the fund itself.[16] Therefore, a minor child, an appointed guardian, or the special master himself could bring an action sounding in contract against the representative payee, alleging, for example, that the representative payee failed to perform in the manner required by the award letter, which performance was promised in exchange for direct payment of the award to the representative payee. Id., pp. 61–62. Thus, the legal nature of the award is a payment directly to the plaintiff that she is contractually bound to receive and use consistent with the conditions imposed by the fund.[17]

The Appellate Court concluded, however, in contrast to our assessment of the legal nature of the fund award, that the creation of the fund by the United States government was an alternative to the statutory right of action under General Statutes § 52-555 for wrongful death, and that the minor child "was entitled to share in the proceeds of any wrongful death action arising out of her father's death, and her right could be asserted on her behalf when she was born, whether that right was a wrongful death action or a claim made to the fund provided by Congress." *Hynes* v. *Jones*, supra, 175 Conn. App. 100. The Appellate Court reasoned that the minor child's right under § 45a-437 to one half of the intestate estate after the first $100,000 "included her right to share proceeds of any wrongful death action against an airline or that right's statutory alternative, namely, the federally sponsored victim compensation fund." Id., 99. We respectfully disagree with the Appellate Court's characterization of the fund award as an alternative to a wrongful death action. Although the Stabilization Act, which created the fund, included a statement of purpose emphasizing the provision of compensation, the appropriate legal characterization of that compensation was left unclear. Indeed, the special master observed that the comments on the regulations revealed conflicting views on the nature and purpose of the Stabilization Act, including whether Congress intended to create a reparation program or to provide tort like compensation. 1 K. Feinberg et al., supra, p. 5. Thus, the regulations were promulgated with the understanding, on the part of the Department of Justice and the special master, that Congress created a compensation system that included some elements of tort compensation, but not all. Id., p. 6. In light of the sui generis nature of the compensation system created by Congress and implemented by the fund, we take the fund award for what it is—a direct payment to the plaintiff that she is contractually bound to receive and use consistent with the conditions imposed by the fund—rather than confer a legal status on the award incommensurate with the sui generis nature of that system.

Because we conclude that the fund award was paid

directly to the plaintiff in express contemplation of the absence of probate court supervision over her receipt and use of the award, and was not the property of the decedent or his estate, we further conclude that the Probate Court lacked jurisdiction over the award as part of its supervision of the administration of intestate estates under §§ 45a-98, 45a-438 (a) and 45a-437 (a).

Similarly, we conclude that §§ 45a-629 (a) and 45a-631 (a) do not afford the Probate Court jurisdiction to prohibit the plaintiff from using the award in the absence of that court's approval. Section 45a-629 (a) provides in relevant part: "When a minor is entitled to property, the court of probate for the district in which the minor resides may assign a time and place for a hearing on the appointment of a guardian of the estate of the minor. . . ." Section 45a-631 (a) provides in relevant part: "A parent of a minor, guardian of the person of a minor or spouse of a minor shall not receive or use any property belonging to the minor in an amount exceeding ten thousand dollars in value unless appointed guardian of the estate of the minor . . . ." In construing these statutes, the Appellate Court adopted a broad definition of "property" and reasoned that, "[t]o conclude that the [minor] has no property interest or entitlement in and to this award, which merits statutory protection for minors, is without any authority under our law." *Hynes* v. *Jones*, supra, 175 Conn. App. 97–98, 104. We respectfully disagree with the Appellate Court.

The salient question is whether the award constitutes property to which the minor child is entitled or property belonging to her within the meaning of §§ 45a-629 (a) and 45a-631 (a), respectively. In considering these statutes, we do not write on a blank slate. See, e.g., *Hummel* v. *Marten Transport, Ltd.*, 282 Conn. 477, 501, 923 A.2d 657 (2007) (concluding legislature did not intend § 1-2z to overrule case law decided prior to its enactment construing statute in manner conflicting with plain meaning rule). The Appellate Court's adoption of an extremely broad definition of property is in tension with our previous conclusion that the meaning of property within § 45a-631 is not without limits. Cf. *Steinmann* v. *Steinmann*, 121 Conn. 498, 504–505, 186 A. 501 (1936) (concluding that statutory predecessor to § 45a-631, which provided "that the parent of a minor child shall not receive or use any property belonging to such child in an amount exceeding $100, unless appointed as guardian of the estate of such minor," did not invalidate child support award because "[t]he amount of the award is not the property of the minor child within the meaning of this statute"). Because we have previously determined that not all interests in property fall within the meaning of property under § 45a-631, a closely related statute to § 45a-629 (a), and because the fund paid the award to the plaintiff in express contemplation of the absence of probate court supervision of her receipt and use of the award, we conclude that a fund award paid

directly to a representative payee for the benefit of her minor child is not property to which the minor child is entitled or property belonging to the minor child within the meaning of §§ 45a-629 (a) and 45a-631 (a), respectively.

Mindful that "[a] court [that] exercises a limited and statutory jurisdiction is without jurisdiction to act unless it does so under the precise circumstances and in the manner particularly prescribed by the enabling legislation"; (internal quotation marks omitted) *Connery* v. *Gieske*, supra, 323 Conn. 388; we conclude that our state statutes did not grant the Probate Court jurisdiction to monitor the plaintiff's use of the fund award or to prohibit the plaintiff from using that award in the absence of that court's approval.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case to that court with direction to render judgment sustaining the plaintiff's appeal.

In this opinion the other justices concurred.

[1] We granted the plaintiff's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly conclude that a September 11th Victim Compensation Fund award, paid to a surviving spouse as a representative payee for the benefit of her minor child, was subject to the jurisdiction and control of Connecticut probate courts?" *Hynes* v. *Jones*, 327 Conn. 930, 171 A.3d 454 (2017).

[2] General Statutes § 45a-98 (a) provides in relevant part: "Probate Courts in their respective districts shall have the power to (1) grant administration of intestate estates of persons who have died domiciled in their districts . . . (3) except as provided in section 45a-98a or as limited by an applicable statute of limitations, determine title or rights of possession and use in and to any real, tangible or intangible property that constitutes, or may constitute, all or part of . . . any decedent's estate, or any estate under control of a guardian or conservator, which . . . estate is otherwise subject to the jurisdiction of the Probate Court, including the rights and obligations of any beneficiary of the . . . estate . . . ."

Although § 45a-98 has been amended since the events underlying the present case; see, e.g., Public Acts 2018, No. 18-45, § 16; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[3] General Statutes § 45a-629 (a) provides in relevant part: "When a minor is entitled to property, the court of probate for the district in which the minor resides may assign a time and place for a hearing on the appointment of a guardian of the estate of the minor. . . ."

[4] General Statutes § 45a-631 (a) provides in relevant part: "A parent of a minor, guardian of the person of a minor or spouse of a minor shall not receive or use any property belonging to the minor in an amount exceeding ten thousand dollars in value unless appointed guardian of the estate of the minor . . . ."

[5] For the sake of simplicity, we hereinafter refer to Olivia as the minor child.

[6] The United States Attorney General was required to appoint a special master to promulgate regulations to implement the fund and to determine claimants' eligibility for compensation. See Air Transportation Safety and System Stabilization Act, Pub. L. No. 107-42, §§ 404 through 405, 115 Stat. 230, 237–38 (2001).

[7] We note that the Probate Court also concluded that the relocation of the plaintiff and the minor child from Norwalk to Weston in April, 2005, did not divest it of jurisdiction. The Probate Court determined that it retained jurisdiction over the decedent's estate because he had been domiciled in Norwalk at the time of his death, and the minor child's award was part of the estate of the decedent, her father.

[8] We note that the defendant has neither filed a brief nor appeared for

oral argument in either the Appellate Court or in this court. See *Hynes* v. *Jones*, supra, 175 Conn. App. 91. Consistent with orders from this court dated February 7 and 23, 2018, rendered pursuant to Practice Book § 85-1, we consider this appeal solely on the basis of the record as defined by Practice Book § 60-4 and the plaintiff's brief.

[9] General Statutes § 45a-303 (a) (1) provides: "When any person domiciled in this state dies intestate, the court of probate in the district in which the deceased was domiciled at his death shall have jurisdiction to grant letters of administration."

[10] See footnote 2 of this opinion.

[11] General Statutes § 45a-438 (a) provides in relevant part: "After distribution has been made of the intestate estate to the surviving spouse . . . the residue of the real and personal estate shall be distributed equally, according to its value at the time of distribution, among the children, including children born after the death of the decedent . . . ."

[12] General Statutes § 45a-437 (a) provides in relevant part: "If there is no will . . . the portion of the intestate estate of the decedent . . . which the surviving spouse shall take is . . . (3) If there are surviving issue of the decedent all of whom are also issue of the surviving spouse, the first one hundred thousand dollars plus one-half of the balance of the intestate estate absolutely . . . ."

[13] According to the final report issued by the special master, "[t]he [s]pecial [m]aster and attorneys working with the [s]pecial [m]aster met personally with victims' advocacy groups, individual members of the victims' families, lawyers, employers, government agencies, members of Congress, members of the judiciary, associations, charities, representatives of the military, fire and police departments, and individuals in state governments to solicit views, concerns and comments about the nature of the [p]rogram and its administration. In addition, the [s]pecial [m]aster and senior attorneys reviewed the thousands of comments submitted to the Department [of Justice], researched theories of compensation and methodologies for the calculation of economic loss, as well as the various state laws governing wrongful death actions, appointment of [p]ersonal [r]epresentatives and determination of state law beneficiaries." 1 K. Feinberg et al., Final Report of the Special Master for the September 11th Victim Compensation Fund of 2001 (2004) p. 4.

[14] We acknowledge the representative payee terminology is not unique to the fund. The Final Report of the Special Master for the September 11th Victim Compensation Fund of 2001 acknowledged that the option to receive funds as a representative payee was an approach that was utilized in other federal programs, including the administration of social security benefits. 1 K. Feinberg et al., supra, pp. 61 and 94 n.182. At least one Connecticut court has considered whether social security benefits paid to the representative payee of a dependent child are property of the child or the payee, and has held that they are property of the child. See *Miller* v. *Shapiro*, 4 Conn. Cir. 63, 225 A.2d 644 (1966). That case is clearly distinguishable, as it dealt with the administration of benefits under a long-standing federal program. In the present case, we are confronted by an altogether different benefit, namely, a unique, onetime distribution of federal funds to provide an expedient method of compensation for victims of a notorious terrorist attack. Accordingly, we conclude that *Miller* is inapposite.

[15] "A final option of utilizing a structured settlement for minors became available after the [f]und was notified of [a decision by the Internal Revenue Service] regarding the election of a periodic payment option through a structured settlement. Senior attorneys at the [f]und and at the Department [of Justice] worked with the [Internal Revenue Service] and [the] Department of [the] Treasury for well over a year in an effort to obtain a detailed determination on the availability of the structured settlement option. In order to [en]sure that the structure was entered into by an individual with authority to bind the minor, the [f]und required that a parent or custodian signing the structure documents be appointed guardian of the property for the minor by a court of competent jurisdiction. For many parents or custodians, such an appointment had to be made on an expedited basis to allow timely approval of the structure. The various surrogate's and probate courts were able to respond quickly to the [f]und's request to expedite these applications for guardianship by granting such appointments for the limited purpose of entering into a structured settlement agreement for the [f]und award. The cooperation of these various courts was instrumental in making the structured settlement option viable for minors." (Footnotes omitted.) 1 K. Feinberg et al., supra, p. 62.

[16] In addition to appearing in the award letter, the fiduciary obligations were made apparent to and were agreed to by the plaintiff when she applied to be a representative payee. "Applicants for the representative payee program were required to sign an acknowledgment that [they] could be held liable if [they] did not prudently invest the funds, maintain separate accounts, and maintain records, or if [they] misused or misappropriated the funds. In addition, the applicant was required to acknowledge that the minor was entitled to receive the award upon reaching [eighteen] years of age and that, at such time, the award would be distributed to the minor unless the minor otherwise consented." 1 K. Feinberg et al., supra, pp. 61–62.

[17] The plaintiff characterizes the payment of the fund award to a parent as a representative payee of a minor child as analogous to leaving property in trust for the benefit of a minor child. As we have previously explained, we choose to take the award for what it is, a direct payment to the plaintiff that she is contractually bound to receive and use consistent with the conditions imposed by the fund. Therefore, consistent with our choice not to adopt the Appellate Court's analogy to wrongful death law, we decline the plaintiff's invitation to analogize to trust law.