******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# LOIS R. STILKEY *v.* ELIZABETH A. ZEMBKO
## (AC 42410)

DiPentima, C. J., and Keller and Flynn, Js.*

*Syllabus*

The plaintiff sought to recover damages from the defendant for statutory theft in connection with her actions in withdrawing certain funds from a retirement account belonging to the plaintiff. The defendant had previously represented the plaintiff in her divorce proceedings, as a result of which the plaintiff received one half of her former husband's pension funds, which were subsequently placed in an individual retirement account. Through the defendant's representation of the plaintiff, she obtained confidential information about the plaintiff and used it to withdraw money from the account without the plaintiff's knowledge or permission over a period of three years. In the defendant's answer, she raised the statute of limitations as a special defense, although she did not specify the statute on which she relied. The plaintiff did not plead the continuing course of conduct doctrine in avoidance of the special defense of the statute of limitations in pleadings or at trial and, instead, raised it in posttrial briefs. The trial court ruled in favor of the plaintiff, finding that she did not authorize the defendant to remove moneys from the IRA and that the defendant took those funds with the intent of depriving the plaintiff of those moneys. The trial court also rejected the defendant's statute of limitations defense, concluding that the continuing course of conduct doctrine, despite being improperly pleaded, operated to toll the three year statute of limitations. On appeal, the defendant claimed, inter alia, that the trial court abused its discretion in considering the plaintiff's continuing course of conduct argument despite improper pleading. *Held*:

1. The court did not abuse its discretion in applying the continuing course of conduct doctrine, as it was within its discretion to reach the merits of the plaintiff's continuing course of conduct claim once it was put before the court, and it was within the court's discretion to determine that no party was prejudiced by the lapse in pleading; both parties failed to comply with the rules of practice, this court could not say that the trial court decided the matter so arbitrarily as to vitiate logic or decided the matter on the basis of improper or irrelevant factors, the defendant had ample opportunity to address the continuing course of conduct doctrine during posttrial briefing but she failed to specify how she was prejudiced by the plaintiff's posttrial invocation of that doctrine, and the trial court was in the best position to determine whether either party had been unfairly prejudiced by the defendant's failure to specify the statute on which her defense rested or by the plaintiff's failure to timely raise the continuing course of conduct doctrine in avoidance of that special defense.

2. The defendant could not prevail on her claim that the trial court improperly concluded that the continuing course of conduct doctrine tolled the statute of limitations, as this court concluded that this claim was briefed inadequately; the defendant's brief contained no citations and no legal authority, or citations to evidence in the record in support of her claim.

3. The trial court's findings that the plaintiff had no knowledge of the defendant's actions and had not consented to or authorized them were not clearly erroneous, as such findings were supported by the evidence and this court was not left with a definite and firm conviction that any mistake had been committed; it was not the function of this court to retry the case or to reassess the credibility of the witnesses.

Argued March 4—officially released September 15, 2020

*Procedural History*

Action to recover damages for, inter alia, statutory theft, brought to the Superior Court in the judicial district of New Britain, where Pamela Rustigian, administratrix of the estate of Lois R. Stilkey, was substituted

as the plaintiff; thereafter, the matter was tried to the court, *Wiese*, *J.*; judgment in favor of the substitute plaintiff, from which the defendant appealed to this court. *Affirmed.*

*Scott M. Schwartz*, for the appellant (defendant).

*Michael P. Barry*, for the appellee (substitute plaintiff).

*Opinion*

DiPENTIMA, C. J. The defendant, Elizabeth A. Zembko, appeals from the judgment rendered after a court trial in favor of the substitute plaintiff, Pamela Rustigian, administratrix of the estate of Lois R. Stilkey (administratrix).[1] On appeal, the defendant claims that the court (1) abused its discretion in considering the administratrix' continuing course of conduct argument despite improper pleading, (2) improperly concluded that the continuing course of conduct doctrine tolled the statute of limitations, and (3) erroneously found that Stilkey had no knowledge of the defendant's actions and did not consent to or authorize those actions. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history, as set forth by the trial court in its memorandum of decision or otherwise gleaned from the record, are relevant to the defendant's claims on appeal. The defendant, an attorney, represented Stilkey in her 2003 divorce. As part of the dissolution action, Stilkey and her former husband executed a qualified domestic relations order (QDRO),[2] under which Stilkey received a 50 percent interest in his Iron Workers' Local 15 and 424 Annuity Fund. The QDRO contained confidential information, including Stilkey's Social Security number, date of birth, home address and telephone number. The defendant had access to all of the confidential information contained in the QDRO.

Stilkey's QDRO funds were invested in a Prudential individual retirement account (IRA). The IRA enrollment form listed Stilkey's mailing address as 11 Townsend Road, Farmington, Connecticut. Stilkey never resided at that address; rather, the defendant had lived there with her husband. Additionally, the defendant was identified as the primary beneficiary of the IRA in the event of Stilkey's death.

From October, 2010 to January, 2013, the defendant made twenty-four phone calls to Prudential, which were recorded. During each call, the defendant misrepresented herself as "Lois Stilkey" and instructed the Prudential representative to disburse funds from the IRA and to send the funds to the defendant's address.

The defendant deposited nineteen of the twenty-four Prudential checks into her own checking account. The checks were endorsed "Lois Stilkey pay to the order of Elizabeth Zembko," or with similar language. The total sum of funds disbursed in the twenty-four checks was $155,002.18, and the total sum deposited into the defendant's checking account was $101,501.31. The five checks deposited into Stilkey's account totaled $56,500.80.

Stilkey commenced this action on July 16, 2015. The administratrix' revised complaint alleged statutory theft

and sought treble damages pursuant to General Statutes § 52-564. The defendant filed an answer and raised a statute of limitations special defense.[3] After the November 1, 2017 trial and a number of posttrial briefs, the court, *Wiese, J.*, issued a memorandum of decision on December 3, 2018. The court rendered judgment in favor of the administratrix in the amount of $304,503.93, awarding treble damages pursuant to § 52-564. The court found that Stilkey had not authorized the defendant to remove $101,501.31 from her Prudential account and that the defendant "took those funds with the intent to deprive . . . Stilkey of her moneys. The theft represented an ongoing scheme to appropriate the moneys and to deplete the Prudential account owned by . . . Stilkey."

Additionally, the court rejected the defendant's statute of limitations defense. Specifically, it concluded that the continuing course of conduct doctrine operated to toll the three year statute of limitations set forth in General Statutes § 52-577. The court stated: "The defendant's theft was not complete until January 4, 2013, and this action, having been commenced by service on July 16, 2015, is within the limitation period set forth in § 52-577." This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court abused its discretion in considering the administratrix' continuing course of conduct argument despite improper pleading. Specifically, she argues that the court should not have considered that doctrine as a consequence of the administratrix' failure to raise it "in the pleadings, at trial and in her initial posttrial brief." The administratrix counters that "[t]he trial court did not err in recognizing a 'continuing course of conduct' exclusion from the statute of limitations defense." We conclude that the court did not abuse its discretion in applying the continuing course of conduct doctrine.

The following additional facts are necessary for our discussion. The first check that the defendant wrongfully deposited into her own checking account was dated October 12, 2010. The final stolen check was dated January 3, 2013. Stilkey filed her complaint on July 15, 2015. The defendant first raised her statute of limitations special defense on May 10, 2017, by way of answer to the administratrix' revised complaint. After trial, the court ordered posttrial briefing on the statute of limitations defense. In the parties' posttrial briefs, they addressed the bilateral pleading deficiencies with respect to the statute of limitations defense and the continuing course of conduct doctrine. The administratrix argued that the defendant had waived the statute of limitations special defense by failing to specify the precise statute on which she relied. In that same brief, the administratrix argued for the first time that if the

statute of limitations special defense had been pleaded properly, then she would have had the opportunity to plead the continuing course of conduct doctrine to toll the statute of limitations. After that "passing reference to the continuing course of conduct doctrine" the court ordered supplemental briefing, ordering the parties to address it specifically. The defendant responded that the continuing course of conduct doctrine should not be considered, because it must be pleaded in avoidance of a special defense pursuant to Practice Book § 10-57.[4]

The court addressed the statute of limitations issue and the deficient pleadings in its memorandum of decision. Specifically, the court explained that "[t]he defendant argues that the court need not reach the merits of the [administratrix'] continuing course of conduct argument because it was not specially pleaded and raised for the first time in a posttrial brief. The court rejects the defendant's argument. The defendant herself did not identify the specific statute on which she relied for her statute of limitations defense until her second posttrial brief. The court will not fault the [administratrix] for failing to plead the continuing course of conduct doctrine in avoidance of the defendant's special defense, when that special defense was a bare assertion that the '[p]laintiff's cause of action is barred by the statute of limitations.' Both parties have erred in their pleadings but however imperfectly they have each pleaded, the issues have been placed before the court and the merits will be reached." The court ruled that the continuing course of conduct doctrine applied, tolling the statute of limitations until the defendant's wrongful conduct terminated.

We agree with the court that both parties failed to comply with our rules of practice. The defendant did not identify specifically the statute on which her statute of limitations defense was based, in violation of the requirement of Practice Book § 10-3 (a). Then, the administratrix, in turn, did not comply with Practice Book § 10-57, due to her failure to plead the continuing course of conduct doctrine in avoidance of the defendant's special defense. The court, nevertheless, decided to overlook the parties' pleading deficiencies.

The issue, therefore, is whether the court properly considered the continuing course of conduct doctrine under these facts and circumstances. We begin with our standard of review. Our Supreme Court has stated that "when a party properly objects to a violation of the rules of practice, the trial court may disregard the improperly raised claim if doing so is not an abuse of discretion." (Internal quotation marks omitted.) *Zatakia* v. *Ecoair Corp.*, 128 Conn. App. 362, 367, 18 A.3d 604, cert. denied, 301 Conn. 936, 23 A.3d 729 (2011). "In general, [an] abuse of discretion exists when a court could have chosen different alternatives but has decided the matter so arbitrarily as to vitiate logic, or

has decided it based on improper or irrelevant factors . . . . Therefore, [i]n those cases in which an abuse of discretion is manifest or where injustice appears to have been done, reversal is required." (Internal quotation marks omitted.) *D'Ascanio* v. *Toyota Industries Corp.*, 133 Conn. App. 420, 428, 35 A.3d 388 (2012), aff'd, 309 Conn. 663, 72 A.3d 1019 (2013). "When reviewing claims under an abuse of discretion standard, the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be in favor of its correctness . . . . Furthermore, we have stated in other contexts in which an abuse of discretion standard has been employed that this court will rarely overturn the decision of the trial court."[5] (Footnote added and omitted; internal quotation marks omitted.) *Zatakia* v. *Ecoair Corp.*, supra, 368.

In the present case, the court, in exercising its discretion, chose to resolve the statute of limitations issue on the merits despite both parties' clear procedural errors. For example, the court could have declined to consider the defendant's statute of limitations defense after she failed to plead a specific statute. Failure to plead the specific statute on which a statute of limitations defense rests is grounds for waiver of that special defense when, as in this case, that statute of limitations is procedural rather than jurisdictional. See *Cue Associates, LLC* v. *Cast Iron Associates, LLC*, 111 Conn. App. 107, 116–17, 958 A.2d 772 (2008) ("[t]he [limitation] period for tort actions found in § 52-577 is procedural rather than jurisdictional, thus making it subject to waiver"). It was within the court's discretion, however, to overlook that procedural error.

Similarly, the court did not abuse its discretion by reaching the merits of the administratrix' continuing course of conduct argument, even though she did not raise it in her pleadings by way of a reply to the special defense but, instead, asserted it for the first time in a posttrial brief. This court said as much in *Bellemare* v. *Wachovia Mortgage Corp.*, 94 Conn. App. 593, 607, 894 A.2d 335 (2006), aff'd, 284 Conn. 193, 931 A.2d 916 (2007). In that case, this court explained that "we respond substantively to the issue . . . because, however imperfectly, the plaintiff placed the issue before the court and, in this instance, we believe it is just to reach the claim." Id. In the present case, the court explained that "[b]oth parties have erred in their pleadings but however imperfectly they have each pleaded, the issues have been placed before the court and the merits will be reached."

Our Supreme Court, in *Flannery* v. *Singer Asset Finance Co.*, *LLC*, 312 Conn. 286, 301, 94 A.3d 553 (2014), explained that "[b]eyond the trial courts' discretion to overlook violations of the rules of practice in the absence of a timely objection from the opposing

party . . . it may be just to reach the merits of a plaintiff's claim to a toll of the statute of limitations, even when not properly pleaded pursuant to Practice Book § 10-57, if the issue is otherwise put before the trial court and no party is prejudiced by the lapse in pleading." In the present case, the trial court was in the best position to determine whether either party had been unfairly prejudiced by the defendant's failure to specify the statute on which her defense rested *or* by the administratrix' failure to timely raise the continuing course of conduct doctrine in avoidance of that special defense.

The defendant had ample opportunity to address the continuing course of conduct doctrine during posttrial briefing. In her supplemental posttrial brief, the defendant objected to the application of the continuing course of conduct doctrine on procedural grounds, arguing only that the court should not address that doctrine because it had not been pleaded in avoidance pursuant to Practice Book § 10-57. Nowhere in the defendant's posttrial briefs did she specify how she was prejudiced by the administratrix' posttrial invocation of that doctrine. Instead, the defendant makes the bald assertion in her appellate brief that "[i]mposing the continuing course doctrine raised after trial to allow the [administratrix] to escape the result of the statute of limitations violates the concept of fundamental fairness."[6]

It was within the court's discretion to reach the merits of the administratrix' continuing course of conduct claim once it was put before the court, and it was within the court's discretion to determine that no party was prejudiced by the lapse in pleading. The defendant has not proven an abuse of discretion in this instance, and we cannot say that the trial court decided the matter so arbitrarily as to vitiate logic, or has decided it on the basis of improper or irrelevant factors. Accordingly, the court did not abuse its discretion, and the defendant's argument to the contrary fails.

II

The defendant claims that the court improperly concluded that the continuing course of conduct doctrine tolled the statute of limitations. The court concluded that the continuing course of conduct doctrine applied to toll the statute of limitations until the defendant's series of thefts was complete on January 4, 2013, and that "this action, having been commenced by service on July 16, 2015, is within the limitation period set forth in § 52-577."

We conclude that the defendant's claim challenging the conclusion that the continuing course of conduct doctrine tolled the statute of limitations defense based on the evidence in this case is briefed inadequately. "We are not required to review issues that have been improperly presented to this court through an inade-

quate brief. . . . Analysis, rather than [mere] abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed." (Citation omitted; internal quotation marks omitted.) *Grasso* v. *Connecticut Hospice, Inc.*, 138 Conn. App. 759, 768, 54 A.3d 221 (2012).

The section of the defendant's brief devoted to this issue consists of two paragraphs. It contains no case citations, nor any citations to other legal authority. It fails to provide an analysis demonstrating why the court's conclusion that the continuing course of conduct doctrine applied was incorrect. See, e.g., *Martin* v. *Martin*, 101 Conn. App. 106, 122, 920 A.2d 340 (2007) (where parties cite no law and provide no analysis of claims, we will not review them). Other than to state, in a conclusory manner, that "[this] is not a typical context argument for this theory" and that "all the claimed acts evidenced at trial were discrete, distinct and identifiable," the defendant failed to cite evidence in the record supporting her claim on appeal that the court incorrectly applied the continuing course of conduct doctrine to these facts.

The defendant's reply brief fares no better. Her one page discussion of the continuing course of conduct doctrine likewise contains no case citations and no legal analysis. Rather, it states that "the facts do not fit the continuing course narrative," and "[t]he continuing course exclusion should not apply where the party is on notice and wilfully blind." Consequently, based on this inadequate briefing, we do not review this abandoned claim.

### III

The defendant claims that the court erroneously found that Stilkey had no knowledge of the defendant's actions and had not consented to or authorized them. Specifically, the defendant challenges the court's findings of fact, claiming that "the trial court erred in failing to consider the implications of [Stilkey's] knowledge of [the] defendant's actions, and consequently, failed to conclude that [the] defendant's such actions were authorized and consented to." The defendant further contends that the five checks deposited into Stilkey's account established "a proper information that Stilkey knew of [the defendant's] assistance for years and took no action . . . assumedly because she consented to such." Additionally, the defendant argues that the "[administratrix] has not evidenced that these checks were forged, has not proven [the] defendant signed the checks, and most importantly has not proven that Stilkey did not sign over those checks to [the defendant]." Finally, the defendant argues that because state and federal taxes were withheld from the checks drawn from Stilkey's Prudential account, "[t]hese deductions

and the consequent benefit to Stilkey on her income tax clearly suggest that Stilkey was aware of the transactions and consented to them." (Emphasis omitted.) We disagree.

The following additional facts are relevant to the defendant's claim. In the administratrix' revised complaint, she alleged that, "[i]n 2009, the defendant reestablished contact with [Stilkey] and gained her trust, and [Stilkey] believed the defendant had become a trusted friend." At trial, the administratrix' counsel asked the defendant two questions related to her 2009 reentry into Stilkey's life: "And sometime in 2009, you befriended Mrs. Stilkey again." "And you helped her with her taxes and learned her Social Security number and took other documents from her house." To both of those questions, the defendant responded: "Upon the advice of counsel, I hereby invoke my fifth amendment right."

Additionally, the administratrix' counsel asked the defendant a number of detailed, probative questions concerning the Prudential transactions. Specifically, the administratrix' counsel asked the defendant: (1) "and Lois Stilkey never gave you her permission to call [Prudential] on her behalf"; (2) "[a]nd you forged [Stilkey's] name on each and every one of those checks that are listed on exhibit two"; and (3) "[y]ou stole all of that money from Mrs. Stilkey, didn't you?" On each occasion the defendant similarly declined to answer, stating: "Upon the advice of counsel, I hereby invoke my fifth amendment right."

The court found that "Stilkey did not authorize [the defendant] to take $101,501.31 of her Prudential account moneys. [The defendant] took these funds with the intent to deprive Ms. Stilkey of her moneys. The theft represented an ongoing scheme to appropriate the moneys and deplete the Prudential account owned by Ms. Stilkey." The court also addressed the defendant's invocation of her fifth amendment right and her refusal to respond to probative questions at trial, noting that "[t]he court infers from the defendant's silence a tacit admission that she stole from Ms. Stilkey." Those findings in particular are the subject of the defendant's claim of error.

We begin by setting forth the applicable standard of review. The trial court's findings of fact "are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole . . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . .

"In applying the clearly erroneous standard of review,

[a]ppellate courts do not examine the record to determine whether the trier of fact could have reached a different conclusion. Instead, we examine the trial court's conclusion in order to determine whether it was legally correct and factually supported. . . . This distinction accords with our duty as an appellate tribunal to review, and not to retry, the proceedings of the trial court. . . .

"[I]n a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony . . . and the trial court is privileged to adopt whatever testimony [it] reasonably believes to be credible. . . . On appeal, we do not retry the facts or pass on the credibility of witnesses." (Citations omitted; internal quotation marks omitted.) *FirstLight Hydro Generating Co.* v. *Stewart*, 328 Conn. 668, 679–80, 182 A.3d 67 (2018).

As we have noted, the defendant exercised her fifth amendment right several times during the trial. The fifth amendment privilege against self-incrimination "not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." (Internal quotation marks omitted.) *Olin Corp.* v. *Castells*, 180 Conn. 49, 53, 428 A.2d 319 (1980), citing *Lefkowitz* v. *Turley*, 414 U.S. 70, 77, 94 S. Ct. 316, 38 L. Ed. 2d 274 (1973). "The privilege does not, however, forbid the drawing of adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them. The prevailing rule is that the fifth amendment does not preclude the inference where the privilege is claimed by a party to a civil cause." (Emphasis omitted.) *Olin Corp.* v. *Castells*, supra, 53–54. Guided by those principles, we address each of the defendant's arguments in turn.

First, the defendant argues that the five checks deposited into Stilkey's account indicate that Stilkey "knew of [the] defendant's assistance." Indeed, the administratrix' revised complaint indicates that the defendant had become Stilkey's "trusted friend," and the defendant's invocation of the fifth amendment when asked whether she prepared Stilkey's tax returns permits the adverse inference that she did so. Accordingly, the court could have found that Stilkey was aware that the defendant was "assisting" her with her finances. The court could also have found, and, indeed, did find that, even if Stilkey had been aware of the defendant's general financial assistance, "[she] did not authorize [the defendant] to take $101,501.31 of her Prudential account moneys." Stilkey may have been aware of the defendant's general financial assistance, but that does not imply that she authorized or consented to the defendant's withdrawals

from her IRA.

Second, the defendant argues that the administratrix failed to prove that the signatures on the checks deposited into the defendant's account were forged, that Stilkey did not sign the checks, and that Stilkey did not sign the checks over to the defendant. At trial, the administratrix presented evidence that the defendant falsely identified herself as Lois Stilkey during each of the Prudential phone calls in order to have checks issued from Stilkey's IRA. Additionally, the administratrix' counsel asked the defendant at trial, "and you forged [Stilkey's] name on each and every one of those checks . . . ." The defendant responded by invoking her fifth amendment right against self-incrimination. Accordingly, the court was entitled to draw an adverse inference that the defendant forged Stilkey's signature on those checks.

Finally, the defendant claims that because state and federal taxes were withheld from the checks at issue, Stilkey must have been aware of the Prudential transactions and consented to them. We disagree. Indeed, there is evidence in the record that the defendant prepared Stilkey's tax returns after reentering her life in 2009. The fact that taxes were withheld from the fraudulently issued checks did not persuade the trial court that Stilkey was aware of the defendant's actions, and we, likewise, are not persuaded.

The court's findings are supported by the evidence and this court is not left with a definite and firm conviction that any mistake has been committed. We conclude, therefore, that the court's findings are not clearly erroneous. We iterate that it is not the function of this court to retry the case or reassess the credibility of the witnesses. Accordingly, the defendant's claims of factual error fail.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] Stilkey died on March 30, 2016, after the commencement of this action. On November 16, 2016, the Berlin Probate Court appointed Stilkey's sister, Rustigian, to serve as the administratrix of her estate. The court granted the administratrix' motion to be substituted as plaintiff in this action on March 20, 2017.

[2] "A QDRO is the exclusive means by which to assign to a nonemployee spouse all or any portion of pension benefits provided by a plan that is governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq." (Internal quotation marks omitted.) *Callahan* v. *Callahan*, 192 Conn. App. 634, 685 n.29, 218 A.3d 655, cert. denied, 333 Conn. 939, 218 A.3d 1050 (2019).

[3] The defendant's special defense stated: "Plaintiff's cause of action is barred by the statute of limitations."

[4] Practice Book § 10-57 provides in relevant part that a "[m]atter in avoidance of affirmative allegations in an answer or counterclaim shall be specially pleaded in the reply."

[5] We note that the administratrix claimed in her appellate brief that the plenary standard of review applied because resolution of this claim involved the interpretation of our rules of practice. We disagree and conclude that the abuse of discretion standard applies.

We note also that, because the defendant failed to raise a claim of prejudice in her posttrial briefs, she cannot raise it for the first time on appeal. See *O'Connell, Flaherty & Attmore, LLC* v. *Doody*, 124 Conn. App. 1, 7–8, 3 A.3d 969 (2010). Regardless, we conclude that the court did not abuse its discretion in considering the continuing course of conduct claim.

---