******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## JOHN SALCE *v.* JOAN CARDELLO
## (AC 43648)

Bright, C. J., and Elgo and DiPentima, Js.

*Syllabus*

The plaintiff and the defendant were beneficiaries of a will and a trust executed by their mother, M. The will and trust agreement contained in terrorem clauses, which provided, inter alia, that if a beneficiary filed a creditor's claim against the estate, or objected in any manner to any action taken or proposed to be taken in good faith by the fiduciary of either instrument, then that beneficiary would forfeit his or her inheritance. While the fiduciary was administering M's estate, the defendant and her attorney realized that the fiduciary had apparently made errors in connection with a state tax form that he had filed on behalf of the estate. The defendant's attorney raised these concerns with the fiduciary, and the defendant provided the fiduciary with certain documentation at his request, but the fiduciary indicated that he would not amend the state tax form unless he was instructed to do so by the Probate Court. The defendant subsequently filed a request with the Probate Court for a hearing on those issues, but later withdrew that request for unknown reasons. Thereafter, the plaintiff filed a complaint in the Probate Court seeking to enforce the in terrorem clauses against the defendant, and the Probate Court denied his request. Subsequently, the plaintiff appealed to the Superior Court from the Probate Court's decision. The Superior Court held a trial de novo and rendered judgment dismissing the plaintiff's appeal. *Held*:

1. The plaintiff could not prevail on his claim that the defendant violated the in terrorem clauses by filing a creditor's claim against the estate: the Superior Court's finding that the defendant did not make a creditor's claim against the estate was not clearly erroneous because, although the defendant had provided the fiduciary with documentation of expenses she incurred on behalf of the trust, the record contained testimony from the defendant, her attorney, and the fiduciary explaining that it was the fiduciary who had requested that documentation; moreover, the defendant's attorney testified that the defendant never presented the fiduciary with a written request for reimbursement, as required by the applicable statute (§ 45a-358 (a)), no evidence of such a written demand was introduced at trial, the fiduciary himself testified that he did not recall receiving a formal written request for reimbursement, and both the defendant and her attorney testified that the defendant had no intention of being reimbursed.

2. This court concluded that, although the defendant technically violated the in terrorem clauses that prohibited a beneficiary from objecting to any actions taken by the fiduciary when she filed her request with the Probate Court, given the facts of the present case, those clauses were unenforceable against the defendant as a matter of public policy: the application of the clear and unambiguous language of the in terrorem clauses punished M's beneficiaries from objecting to any actions of the fiduciary, including nondiscretionary, ministerial acts, which undermined important private and public interests, such as a beneficiary's interest in protecting the estate's assets, the state's interest in receiving accurate tax filings and payments, and judicial oversight of the fiduciary's actions; moreover, in the present case, the fiduciary unquestionably made a mistake on the state tax form, and, in strictly complying with the in terrorem clauses, the defendant could not seek judicial review to correct that mistake, without risking forfeiture, despite its potential impact on her finances, the assets of the estate, and the accuracy of the fiduciary's filings with the Probate Court and the state of Connecticut.

Argued October 12, 2021—officially released January 18, 2022

*Procedural History*

Appeal from the decision of the Probate Court for the district of Branford-North Branford denying the

plaintiff's request to enforce certain provisions of a will and a trust agreement, brought to the Superior Court in the judicial district of New Haven, where the defendant filed a counterclaim; thereafter, the matter was tried to the court, *Wilson, J.*; judgment in favor of the plaintiff on the defendant's counterclaim and dismissing the plaintiff's appeal, from which the plaintiff appealed to this court. *Affirmed.*

*Kenneth A. Votre*, for the appellant (plaintiff).

*Matthew D. McCormack*, for the appellee (defendant).

*Opinion*

BRIGHT, C. J. The plaintiff, John Salce, appeals from the judgment of the Superior Court dismissing his appeal from the Probate Court's decision that the defendant, Joan Cardello, did not violate the in terrorem clauses set forth in their deceased mother's will and trust agreement. We affirm the judgment of the Superior Court.

The following facts, as found by the court, and procedural history are relevant to our resolution of this appeal. The plaintiff and the defendant are the son and daughter, respectively, of Mae Salce (Mae). Mae was the settlor of the Amended and Restated Mae Salce Revocable Trust Agreement (trust or trust agreement), which was established on June 29, 2005, and amended on April 3, 2008. The principal asset of the trust was Mae's interest in a piece of real property known as 113 Buffalo Bay in Madison (Buffalo Bay). The trust agreement provided that the defendant would serve as the trustee for the trust until Mae died, at which time Attorney Jay L. Goldstein would become the trustee. Pursuant to the terms of the trust agreement, on December 22, 2005, the defendant, acting as trustee of the trust, transferred a one-half interest in Buffalo Bay to herself. The trust agreement further provided that the defendant would receive the other one-half interest in Buffalo Bay at the time of Mae's death. On the same day that Mae amended the trust, she also executed her last will and testament. Consistent with the terms of the trust agreement, article third of the will provides that all of Mae's interest in Buffalo Bay was bequeathed to the defendant. It further provides that, if the defendant predeceased Mae, that Mae's interest in Buffalo Bay would be devised to "[the defendant's] issue, per stirpes or if there shall be no such issue to [the plaintiff] if [the plaintiff] shall survive me, of if [the plaintiff] shall not survive me to [the plaintiff's] issue, per stirpes." In article fourth of her will, Mae forgave the plaintiff's obligation to pay any outstanding amounts due to her pursuant to a December 22, 2001 promissory note in the principal amount of $700,000.[1] In article seventh of her will, Mae designated the defendant as the executor of her estate.

Both the trust agreement and the will contain an in terrorem clause providing that, if a beneficiary takes certain actions, he or she forfeits his or her rights as a beneficiary under the instruments. The in terrorem clause in the trust agreement provides in relevant part: "If [a] beneficiary under this Trust Agreement . . . directly or indirectly . . . (iv) objects in any manner to any action taken or proposed to be taken in good faith by any Trustee . . . [and/or] (vii) files any creditor's claim against Trustee (without regard to its validity) . . . then that person's right as a beneficiary of this Trust Agreement and to take any interest given to

him or her by terms of this Trust Agreement . . . shall be determined as it would have been determined if the person and the person's descendants had predeceased Settlor without surviving issue." The in terrorem clause in the will likewise states in relevant part: "If [a] beneficiary hereunder . . . directly or indirectly . . . (iv) objects in any manner to any action taken or proposed to be taken in good faith by any Executor or trustee . . . [and/or] (vii) files any creditor's claim against my Executor (without regard to its validity) or trustee . . . then that person's right as a beneficiary of this Will and any Codicil thereto or trust . . . shall be determined as it would have been determined if the person and the person's descendants had predeceased me without surviving issue."

Mae died on April 12, 2012. Thereafter, Attorney Goldstein became the trustee of the trust pursuant to the terms of the trust, as well as the executor of Mae's estate, after the defendant declined to serve as the executor. While administering the estate, Attorney Goldstein sent letters to the beneficiaries, including the defendant, which detailed their required contributions for the payment of certain taxes and fees incurred by the estate. The beneficiaries were also permitted to inspect the Form CT-706/709 Connecticut Estate and Gift Tax Return (CT-706) that Attorney Goldstein had filed on behalf of the estate. When the defendant reviewed the CT-706, she noticed that a Citizens Bank account that belonged solely to her mistakenly had been listed as an asset of the estate. The defendant's attorney, Alphonse Ippolito, also reviewed the CT-706. In doing so, he realized that Attorney Goldstein also had inflated the value of the estate and increased the beneficiaries' tax burdens by failing to deduct two outstanding loans that were secured by mortgages on Buffalo Bay.[2]

Attorney Ippolito raised these apparent errors with Attorney Goldstein, who then asked the defendant to "produce evidence verifying that the income received pursuant to the mortgages was expended in connection with the administration of the trust." The defendant did so, but Attorney Goldstein still refused to amend the CT-706 either to remove the Citizens Bank account or to deduct the outstanding mortgages. Attorney Goldstein did, however, indicate to Attorney Ippolito that he would amend the return if instructed to do so by the Probate Court. The defendant, on July 30, 2014, filed a request with the Probate Court for a hearing on these issues, but later withdrew the request for unknown reasons.

Thereafter, the plaintiff filed a complaint in the Probate Court alleging that the defendant's filing of her request for a hearing, and the issues raised therein, violated the in terrorem clauses in both the will and the trust agreement. Specifically, the plaintiff argued that the defendant had violated the in terrorem clauses

by (1) filing a creditor's claim against the estate and (2) challenging Attorney Goldstein's refusal to amend the CT-706. Enforcement of the in terrorem clauses as requested by the plaintiff would cause Mae's bequeath of her one-half interest in Buffalo Bay to the defendant to be nullified and, pursuant to the terms of her will, result in that interest being bequeathed to the plaintiff. The plaintiff, on December 17, 2015, also instituted a lawsuit in Superior Court seeking to invalidate Attorney Goldstein's December, 2012 transfer by quitclaim deed of the estate's interest in Buffalo Bay to the defendant pursuant to the will and trust. In response to the plaintiff's complaint in the Probate Court, the defendant claimed that the plaintiff violated the in terrorem clauses by delaying the administration of the estate and by instituting the Superior Court action seeking to invalidate the transfer of the estate's remaining interest in Buffalo Bay to the defendant.

Following a hearing, the Probate Court concluded that neither the plaintiff nor the defendant had violated the in terrorem clauses. Furthermore, the Probate Court concluded that Attorney Goldstein had erred in including the Citizens Bank account in the estate's assets and ordered that it be removed from the accounting.

The plaintiff appealed from the Probate Court's refusal to enforce the in terrorem clauses against the defendant to the Superior Court, pursuant to General Statutes § 45a-186 (b).[3] The defendant then filed a counterclaim in that appeal, alleging that the plaintiff had violated the in terrorem clauses by instituting the December 17, 2015 action to invalidate Attorney Goldstein's transfer of the estate's interest in Buffalo Bay to the defendant pursuant to the will and the trust.

The Superior Court held a five day trial de novo[4] on the plaintiff's appeal and the defendant's counterclaim. Thereafter, the court issued a memorandum of decision, in which it concluded that neither party had violated the in terrorem clauses. With regard to the defendant, specifically, the court concluded that she had not violated the clauses because she (1) never filed a creditor's claim against the estate, and (2) acted in good faith, upon probable cause, and with reasonable justification when challenging Attorney Goldstein's actions in administering the estate and the trust, thus excusing any violations of the in terrorem clauses. The plaintiff then appealed to this court.[5] Additional facts will be set forth below as necessary.

We first set forth our standard of review and the applicable law. In appeals in which the trial court has ruled on a probate appeal de novo, "we treat our scope of review as we would with any other Superior Court proceeding." *Hynes* v. *Jones*, 175 Conn. App. 80, 93, 167 A.3d 375 (2017), rev'd on other grounds, 331 Conn. 385, 204 A.3d 1128 (2019). When the court has made factual findings, we defer to those findings unless they

are clearly erroneous. Id. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Stilkey* v. *Zembko*, 200 Conn. App. 165, 178, 238 A.3d 78 (2020). With regard to matters of law, however, including the proper construction of an in terrorem clause, our review is plenary. *Hynes* v. *Jones*, supra, 93; see also *Savage* v. *Oliszczak*, 77 Mass. App. 145, 147, 928 N.E.2d 995 (2010) ("[t]he determination that the defendants' challenge to the will did not trigger the trust's in terrorem clause is a legal conclusion that we review de novo" (internal quotation marks omitted)).

Our primary objective when interpreting a will or trust agreement is to ascertain and effectuate the intent of the testatrix and/or settlor. *Canaan National Bank* v. *Peters*, 217 Conn. 330, 335, 586 A.2d 562 (1991). "In searching for that intent, we look first to the precise wording employed by the testatrix [or settlor] in [the will or trust agreement] . . . for the meaning of the words as used by the testatrix [or settlor] is the equivalent of her legal intention—the intention that the law recognizes as dispositive." (Citations omitted.) Id., 335–36. Where the language of a will or trust agreement is clear and unambiguous, the plain meaning of the instrument controls. *Palozie* v. *Palozie*, 283 Conn. 538, 546–47, 927 A.2d 903 (2007); see also *Canaan National Bank* v. *Peters*, supra, 337 ("[a] court may not stray beyond the four corners of the will where the terms of the will are clear and unambiguous" (internal quotation marks omitted)).

An in terrorem clause is a provision within a will or trust agreement that typically states that if a beneficiary to the will or trust contests that instrument, his or her inheritance or benefits under the instrument are forfeited. See *McGrath* v. *Gallant*, 143 Conn. App. 129, 132 n.1, 69 A.3d 968 (2013) ("[a]n in terrorem, or no-contest, clause is [a] provision designed to threaten one into action or inaction; esp., a testamentary provision that threatens to dispossess any beneficiary who challenges the terms of the will" (internal quotation marks omitted)). As a general rule, in terrorem clauses are valid in Connecticut. See *South Norwalk Trust Co.* v. *St. John*, 92 Conn. 168, 174–75, 101 A. 961 (1917). Such clauses, however, are disfavored by the courts and thus must be construed strictly to prevent forfeiture. *In re Probate Appeal of Stuart*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-11-6010417-S (February 22, 2012) (53 Conn. L. Rptr. 558). Moreover, for an in terrorem clause to be valid, the clause must be certain, lawful, and not opposed to public policy. See *Peiter* v. *Degenring*, 136 Conn. 331, 335, 71 A.2d 87 (1949) ("[a testatrix] may impose such conditions

as [she] pleases upon the vesting or enjoyment of the estate [she] leaves, provided they are certain, lawful and not opposed to public policy"). In the case of will contests specifically, Connecticut law also recognizes an exception to the enforcement of in terrorem clauses when a beneficiary's contest of the will was "made in good faith, and upon probable cause and reasonable justification . . . ." *South Norwalk Trust Co.* v. *St. John*, supra, 177.

On appeal, the plaintiff claims that the defendant violated the in terrorem clauses in both the will and the trust agreement by (1) filing a creditor's claim against the estate and (2) objecting to the actions that Attorney Goldstein took with respect to the estate's CT-706. We review each claim in turn.

I

The plaintiff first contends that the defendant violated the in terrorem clauses by filing a creditor's claim against the estate. Specifically, the plaintiff argues that the list of expenses that the defendant provided to Attorney Goldstein, in response to his request that she provide documentation that the proceeds from the loans and mortgages she entered into as trustee were expended in connection with the administration of the trust, constituted a creditor's claim filed against the estate. We are not persuaded.

The in terrorem clauses in both the will and the trust agreement state that a beneficiary forfeits his or her inheritance if he or she files a creditor's claim against either the executor or the trustee. A creditor's claim is a demand for payment or reimbursement from an estate. See General Statutes § 45a-353 (d) and (e). For a creditor's claim to be properly filed, the party with the claim must present the claim, in writing, to the fiduciary. General Statutes § 45a-358 (a) ("[e]very claim shall be presented to the fiduciary in writing"); *Keller* v. *Beckenstein*, 305 Conn. 523, 533, 46 A.3d 102 (2012) ("a party who holds a claim against an estate must present that claim first to the fiduciary").

The court found that the defendant did not make a creditor's claim against the estate because she never submitted a written demand for reimbursement to Attorney Goldstein. Accordingly, the court held that the defendant had not violated the in terrorem clauses by filing a creditor's claim. Because this is a factual finding, we defer to the trial court unless that finding was clearly erroneous. See *Hynes* v. *Jones*, supra, 175 Conn. App. 93. We conclude that this finding was not clearly erroneous.

The defendant, Attorney Ippolito, and Attorney Goldstein all testified that it was Attorney Goldstein who had requested the documentation of expenses on behalf of the trust and that he had done so to help determine whether it was proper to deduct the out-

standing loans from the value of the estate. Attorney Ippolito also testified that the defendant never presented Attorney Goldstein with a written request for reimbursement, as required by § 45a-358 (a). Indeed, Attorney Goldstein himself testified that he did not remember ever receiving a formal written request for reimbursement. Moreover, no evidence of such a written demand pursuant to § 45a-358 (a) was ever introduced at trial, and both the defendant and Attorney Ippolito testified that the defendant had no intention of being reimbursed.[6]

Therefore, because the record supports the court's conclusion that the defendant never filed a creditor's claim against Attorney Goldstein, that factual finding is binding upon this court. Accordingly, we agree with the court's conclusion that the defendant did not violate the in terrorem clauses by filing a creditor's claim.[7]

II

The plaintiff also contends that the defendant violated the in terrorem clauses when she challenged Attorney Goldstein's refusal (1) to remove her Citizens Bank account from the estate's CT-706 and (2) to deduct the outstanding mortgages from the value of the estate. The court did not address whether the defendant violated the express terms of the in terrorem clauses when she challenged Attorney Goldstein's actions. Instead, the court concluded that the defendant's challenges to Attorney Goldstein's actions did not violate the in terrorem clauses because they were made in good faith, upon probable cause, and with reasonable justification.[8]

The plaintiff argues on appeal that the court erred in its analysis because Connecticut does not recognize a good faith exception to the enforcement of an in terrorem clause that protects a fiduciary's actions from challenge. He thus argues that the defendant's request for a hearing in the Probate Court can be viewed as nothing other than a challenge to Attorney Goldstein's good faith preparation of the estate's CT-706 that violated the express terms of the in terrorem clauses. The defendant argues that the good faith exception applies to in terrorem clauses in all circumstances, but also argues that if the good faith exception does not apply to the terrorem clauses here, the clauses are still unenforceable because they violate public policy. Specifically, the defendant argues that enforcement of the in terrorem clauses as written would limit the judiciary's oversight role, violate her constitutional right to seek redress for injury, improperly give the fiduciary unfettered power, and subvert the statutory probate claims process.

We agree with the plaintiff that the defendant technically violated both clauses when she challenged Attorney Goldstein's actions. We also conclude, however,

that, given the facts of the present case, enforcing the in terrorem clauses against the defendant would violate public policy and, thus, the clauses are unenforceable as to the defendant's conduct. Consequently, we do not reach the question of whether a good faith exception applies in this case because the clauses are unenforceable even in the absence of such an exception.

Because the resolution of this claim requires us to interpret the in terrorem clauses at issue, it presents a question of law that is subject to plenary review. See *Hynes* v. *Jones*, supra, 175 Conn. App. 93. Both in terrorem clauses state that a beneficiary forfeits his or her rights as a beneficiary under the instruments if he or she "directly or indirectly . . . objects in *any* manner to *any* action taken or proposed to be taken in good faith" by either the executor or the trustee. (Emphasis added.) This plain language makes clear that all challenges to any actions taken by Attorney Goldstein constitute a violation of the in terrorem clauses. See *Palozie* v. *Palozie*, supra, 283 Conn. 547 (where will or trust agreement is unambiguous, instrument must be given effect in accordance with plain language). Therefore, when the defendant filed an application and request for a hearing before the Probate Court, in which she challenged Attorney Goldstein's preparation of the CT-706, the defendant objected to his actions and, thus, technically violated both in terrorem clauses.

That, however, is not the end of our analysis. Under Connecticut law, in terrorem clauses are void if they violate public policy. See *Peiter* v. *Degenring*, supra, 136 Conn. 335. We conclude that enforcing the in terrorem clauses to punish the defendant's conduct in this case would violate public policy. As such, the clauses are unenforceable.

A strict reading of both clauses wholly bars Mae's beneficiaries, at the risk of forfeiture, from objecting to any perceived errors that Attorney Goldstein makes while administering the estate and the trust. This punishment precludes objections to his actions that involve the exercise of judgment as well as to actions that are purely ministerial in nature. We recognize that a testatrix or settlor may have a keen interest in protecting her designated fiduciary from attacks on the fiduciary's good faith exercise of judgment, such as how to invest the assets of the trust or at what price to sell assets of an estate. Under most circumstances, an in terrorem clause that has the effect of limiting challenges to such good faith exercises of judgment would not violate public policy.

On the other hand, there is little benefit to, and potentially significant harm from, an in terrorem clause that punishes objections to errors made by the fiduciary in his nondiscretionary administration of a trust or an estate. For example, although there is benefit to a settlor of a trust knowing that her fiduciary can make good

faith investment decisions without worrying about being second-guessed by a beneficiary, neither the settlor nor the beneficiaries benefit from the fiduciary making mathematical errors in the calculation of taxes that the trust owes.

In the present case, application of the clear and unambiguous language of the in terrorem clauses punishes the beneficiaries of the estate and the trust from objecting to any actions of the trustee, including nondiscretionary, ministerial acts. Because such a clause undermines important private and public interests with no corresponding benefit, it violates public policy. See, e.g., *Sinclair* v. *Sinclair*, 284 Ga. 500, 502–503, 670 S.E.2d 59 (2008) ("After a will has been admitted to probate, certain duties and obligations are thereupon imposed by law on the named executor. . . . The executor, therefore, remains amenable to law in all his acts and doings as such, and a beneficiary under the will, in seeking to compel the performance . . . of his duty, will not be penalized for so doing. . . ." (Citation omitted.)) Specifically, beneficiaries have important interests in making sure that a fiduciary does the ministerial parts of his job correctly, that the fiduciary's actions do not endanger the estate's assets, and that both the beneficiaries and the estate are paying the correct amount in taxes. See *In re Estate of Wojtalewicz*, 93 Ill. App. 3d 1061, 1063, 418 N.E.2d 418 (1981) (concluding that enforcement of in terrorem clause would contravene public policy because enforcing clause would potentially "endanger the assets of the estate" due to "executor's [alleged] lengthy period of inaction and his failure to file proper tax returns [causing] the estate to incur substantial penalties"). Similarly, the state has a significant interest in receiving correct tax documents and payments. If beneficiaries cannot correct mistakes that fiduciaries make when filing an estate's tax returns, as would be the case here if the in terrorem clauses were enforced pursuant to their plain meaning to punish the defendant's actions in this case, then the state's interest in receiving accurate tax filings and payments is substantially impaired.

Finally, enforcing the in terrorem clauses as suggested by the plaintiff would significantly limit valuable judicial oversight of the fiduciary's actions. "Courts exist to ascertain the truth and to apply the law to it in any given situation; and a right of devolution which enables a [testatrix] to shut the door of truth and prevent the observance of the law, is a mistaken public policy." *South Norwalk Trust Co.* v. *St. John*, supra, 92 Conn. 176–77; see also *Griffin* v. *Sturges*, 131 Conn. 471, 482–83, 40 A.2d 758 (1944) (clause barring appellate review of Probate Court's determination as to whether beneficiary was entitled to income from estate was contrary to right to appeal and thus void). Beneficiaries to a trust or an estate must be able to turn to the judicial system for help when a fiduciary's nondiscretionary

actions endanger the interests of the beneficiaries or the estate, as occurred here when Attorney Goldstein allegedly overstated the value of the estate and, consequently, increased its tax burden. See Conn. Const., art. I, § 10 ("[a]ll courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay"). The defendant should not be required to risk forfeiture to ensure that the fiduciary has correctly performed his required legal obligations.

In the present case, Attorney Goldstein unquestionably made a mistake when he listed the defendant's Citizens Bank account as an asset of the estate.[9] In strictly complying with the in terrorem clauses, however, the defendant could not seek judicial review to correct that mistake, without risking forfeiture, despite its potential impact on her finances, the assets of the estate, and the accuracy of Attorney Goldstein's filings with the Probate Court and the state of Connecticut. Such a result would violate public policy.

For the foregoing reasons, although the defendant technically violated both in terrorem clauses when she challenged Attorney Goldstein's actions in administering the estate and the trust, enforcing the clauses as written would violate public policy. Accordingly, we conclude that the in terrorem clauses are unenforceable against the defendant as a matter of public policy.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The will describes the payee of the promissory note as Mae's deceased husband, John J. Salce.

[2] In her role as trustee, the defendant took out two loans that were secured by mortgages on Buffalo Bay so that she could pay for expenses related to the property.

[3] General Statutes § 45a-186 (b) provides in relevant part: "Any person aggrieved by an order, denial or decree of a Probate Court may appeal therefrom to the Superior Court. . . ."

[4] Because no record was made of the probate proceedings below, the court was "required to undertake a de novo review of the Probate Court's decision." *Hynes* v. *Jones*, 175 Conn. App. 80, 93, 167 A.3d 375 (2017), rev'd on other grounds, 331 Conn. 385, 204 A.3d 1128 (2019).

[5] The defendant did not appeal from the court's judgment on her counterclaim that the plaintiff did not violate the in terrorem clauses.

[6] This testimony appears to conflict with the defendant's application for a hearing before the Probate Court, which stated, in part, that "[t]he petitioner further contends that if the mortgages do not reduce the taxable estate, then the *petitioner's claim to be reimbursed* for payment for maintenance on the property should be recognized." (Emphasis added.) This statement, however, does not change the fact that the defendant never provided Attorney Goldstein with a written claim for reimbursement, as required by § 45a-358 (a). Furthermore, the defendant withdrew her request for a hearing. Moreover, "the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony . . . and the trial court is privileged to adopt whatever testimony [it] reasonably believes to be credible. . . . On appeal, we do not retry the facts or pass on the credibility of witnesses." (Internal quotation marks omitted.) *Stilkey* v. *Zembko*, supra, 200 Conn. App. 178. Thus, the existence of this single sentence in the defendant's request for a hearing, which was later withdrawn, does not lead us to conclude that the court erred when it found that the defendant never filed a creditor's claim.

[7] Even assuming that the defendant did file a creditor's claim, and thus violated the in terrorem clauses, we conclude, as discussed in part II of this opinion, that the in terrorem clauses in the present case violate public policy and are thus unenforceable.

[8] In the underlying proceeding, the court, on the basis of our Supreme Court's precedent in *South Norwalk Trust Co.* v. *St. John*, supra, 92 Conn. 177, held that because the defendant acted in good faith, upon probable cause, and with reasonable justification when she challenged Attorney Goldstein's actions, she was not in violation of the in terrorem clauses. Neither this court nor our Supreme Court has ever applied this good faith exception to anything other than a will contest. On appeal, the defendant asks us to hold that the good faith exception created in *South Norwalk Trust Co.* applies not only to will contests but also applies more broadly to challenges to the actions of a fiduciary to a trust or an estate. For the reasons stated in this opinion, we do not reach this issue.

[9] The court found, and the plaintiff concedes, that this action was erroneous.